# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO,<br><br>    Plaintiff,<br><br> v.<br><br>AT & T INC.,<br><br>    Defendant. | Civ. No. _____ |

## COMPLAINT TO COMPEL ARBITRATION

Plaintiff COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO ("CWA" or "the Union") hereby brings this Complaint to Compel Arbitration against Defendant AT&T, INC. ("AT&T") under Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and the Federal Arbitration Act, 9 U.S.C. § 4.

In support of this petition, the Union alleges as follows:

1. This is a petition to compel arbitration in accordance with a Memorandum of Agreement between the Union and AT&T executed on April 9, 2017 in effect through April 10, 2021.

# PARTIES

2. Plaintiff CWA is a labor organization representing employees in industries affecting commerce within the meaning of Section 2(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §152(5). The Union maintains headquarters in Washington, D.C.

3. Defendant AT&T, Inc. is a parent company acting for itself and as an agent for its companies, divisions, subsidiaries and operating units. It and its subsidiaries are employers within the meaning of Section 2(2) of the LMRA, 29 U.S.C. §152(2), headquartered in Dallas, Texas and doing business in this District.

# JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to Section 301(a) of the LMRA, 29 U.S.C. §185(a) and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*., as AT&T, Inc. and its affiliates do business in this District. AT&T agreed to designate Arbitrator Richard I. Bloch, located in this District, to arbitrate disputes under the parties' Agreement.

5. Venue lies within this judicial district pursuant to Section 301(a) of the LMRA, 29 U.S.C. §185(a). Plaintiff CWA is headquartered in this District, and the Arbitrator designated by the parties is located in this District.

3
## GENERAL ALLEGATIONS

### The Agreement

6.  The Union and AT&T are parties to a Memorandum of Agreement Regarding Neutrality and Card Check Recognition (the "Neutrality Agreement" or "Memorandum of Agreement") governing union organizing procedures and union support for regulatory and legislative measures relating to AT&T's efforts to remain competitive in, and/or gain entry to, telecommunications markets. This Memorandum was recently renewed as of April 9, 2017 for a term through April 10, 2021. A true and correct copy of the Agreement is attached as Exhibit A hereto.

7.  The Memorandum of Agreement was entered into and signed by AT&T, Inc. on behalf of "AT&T Inc. and all other present and future companies, divisions, subsidiaries or operating units thereof, except AT&T of Puerto Rico, Inc., AT&T of the Virgin Islands, Inc., AT&T Government Solutions, Inc., AT&T Support Services Company, Inc., and AT&T Global Com. Services Inc." Exhibit A, Article 2(b).

8.  The Union, through its President Christopher Shelton, approved the agreement as binding on the CWA nationwide.

9.  The Memorandum of Agreement has been attached and renewed to

4

collective bargaining agreements between CWA Districts and AT&T subsidiaries, including the 2017-2021 collective bargaining agreement between the Union and Southwestern Bell Telephone Company, AT&T Services, Inc., and DIRECTV, LLC (the "Southwest CBA.") A true and correct copy of the 2017-2021 collective bargaining agreement between the Union and Southwestern Bell Telephone Company, AT&T Services, Inc., and DIRECTV, LLC is attached as Exhibit B hereto.

10. While the remainder of the 2017-2021 collective bargaining agreement between the Union and Southwestern Bell Telephone Company, AT&T Services, Inc., and DIRECTV, LLC relates to those subsidiaries, the parties agreed that "the Memorandum of Agreement – Regarding Neutrality and Card Check Recognition, effective April 9, 2017 through April 10, 2021, as set forth in ATTACHMENT I hereto" was entered on behalf of AT&T Inc. for all of its "present and future companies, divisions, subsidiaries or operating units thereof, except AT&T of Puerto Rico, Inc., AT&T of the Virgin Islands, Inc., AT&T Government Solutions, Inc., AT&T Support Services Company, Inc., and AT&T Global Com. Services Inc." Exhibit B, Attachment I, p. 105.

11. Article 22, p. 22 of the Southwest Agreement provides: "Upon ratification, the Card Check agreement will be administered on a national basis by

the CWA and AT&T."

12.     CWA's National President Christopher Shelton approved the Memorandum of Agreement and the Southwest Agreement to which it was attached in April 2017. The Union representative Claude Cummings, who signed the Memorandum, did so on behalf of and with the authority of the National Union and its President.

13.     CWA and all of its subordinate Districts and locals, have been bound by, and complied with, the Memorandum of Agreement at all relevant times.

## The Present Dispute

14.     On or about June 14, 2018, AT&T successfully closed a merger with Time Warner.

15.     Pursuant to its obligations under the Memorandum of Agreement, the Union affirmatively endorsed AT&T's acquisition of Time Warner in regulatory and legislative fora at all material times prior to the successful closure of the merger.

16.     A dispute has arisen between the parties over the composition of the bargaining units subject to the Memorandum of Agreement as it relates to former Time Warner employees. In particular, the Union and AT&T dispute which classifications of former Time Warner employees should be included in what

bargaining units for purposes of the Memorandum of Agreement. The Union contends that AT&T's Time Warner acquisition triggers the "non-management" applicability provisions of Paragraph 2(c) and the unit-definition procedure of Paragraph 3(c)(1), or in the alternative, that it constitutes an organizational change that requires redefinition of the units under Paragraph 3(c)(2).

17.     Paragraph 2(c) of the Memorandum of Agreement provides as follows:

> As used herein, "non-management" means employees who normally perform work in non-management job titles as determined by the Company, in accordance with the statutory requirements of the National Labor Relations Act, as amended, and applicable decisions of the National Labor Relations Board and reviewing courts. If the Union disagrees with any such determination, the parties agree to submit the issues or unit definition to arbitration as set forth in paragraph 3, below, using the aforesaid statutory requirements and decision as the governing principles.   At the request of the Union, the Company will discuss with the Union neutrality as to Union representation of employees who are not defined above as "non-management".

18.     Paragraphs 3(c)(1) and (2) of the Memorandum of Agreement provide as follows:

> (c). (1). The Union and the Company shall meet within a reasonable period, but not to exceed ninety (90) days, after the effective date hereof for the purpose of defining appropriate bargaining units for all presently existing potential bargaining units. During this process, the Company will share job titles, job functions, work locations, and management structure with the Union representatives in order to facilitate agreements on the appropriate bargaining units. In the event that the parties are unable to agree, after negotiating in good faith for a reasonable time, upon the description of an

appropriate unit for bargaining, the issue of the description of such unit shall be submitted to arbitration administered by, and in accordance with, the rules of the American Arbitration Association (AAA). The Arbitrator shall be confined solely to the determination of the appropriate unit for bargaining and shall be guided in such deliberations by the statutory requirements of the National Labor Relations Act. The parties agree that the decision of the Arbitrator shall be final and binding. The Company and the Union agree that the permanent Arbitrator to hear disputes with respect to this sub-paragraph shall be Richard Bloch. If the permanent Arbitrator cannot serve, the parties shall select an Arbitrator from a list or lists of prospective Arbitrators provided by the AAA.

(2). If either the Company or the Union believes that the bargaining unit as agreed or determined in (c). (1). above, is no longer appropriate due to organizational changes, then the parties shall meet and confer in good faith for the purpose of redefining the appropriate unit. In the event that the parties are unable to agree, after negotiating in good faith for a reasonable time, upon the re-definition of an appropriate unit, the issue of the description of such unit shall be submitted to arbitration as provided in (c). (1).

19. On March 6, 2019, the Union demanded arbitration of the dispute before Arbitrator Bloch.

20. On March 8, 2019, AT&T on behalf of itself and its operating subsidiaries, notified Arbitrator Bloch that it refused to arbitrate, claiming that "the current dispute regarding the meaning and application of the Agreement is excluded from arbitration under the Agreement."

21. On April 12, 2019, the Union reiterated its demand for arbitration of the dispute.

22. On April 15, 2019, AT&T on behalf of itself and its operating

8

subsidiaries, again notified Arbitrator Bloch that it refused to arbitrate.

23. On April 16, 2019, Arbitrator Bloch cancelled any proffered dates and awaited further notice should the parties jointly determine to proceed.

## **CLAIM TO COMPEL ARBITRATION**

24. The allegations of paragraphs 1-23 are incorporated as if fully set forth herein.

25. AT&T has breached its agreement to arbitrate disputes concerning the determination and/or redefinition of bargaining units under Paragraphs 2(c) and 3(c)(1)-(2) of the Memorandum of Agreement.

26. AT&T agreed to incorporate the Rules of the American Arbitration Association (AAA) in Paragraph 3(c). Rule 3 of the American Arbitration Association's Labor Arbitration Rules provides:

> 3.a. The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement.
>
> b. The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

27. By agreeing to incorporate the AAA Rules, AT&T clearly and unmistakably agreed to submit to the Arbitrator's decision over the scope of his

jurisdiction under Paragraph 3 of the Memorandum of Understanding.

28.     The conditions precedent to arbitration have been satisfied and AT&T has no valid reason not to arbitrate this dispute.

29.     Pursuant to Section 301 of the LMRA, 29 U.S.C. §185 and Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, this Court has authority to compel AT&T to arbitrate its dispute with CWA over the determination of bargaining units of the Agreement.

///

///

10
## **PRAYER FOR RELIEF**

The Union respectfully requests that this Court enter an order:

(A)   To compel AT&T to arbitrate the dispute described in the Union's March 6 and April 12, 2019 demands for arbitration to Arbitrator Bloch;

(B)   Order reimbursement of the Union's costs and attorneys' fees; and

(D)   Order such other relief as the Court deems appropriate.

Respectfully submitted,

/s Michael T. Anderson

Michael T. Anderson (# 459617)
Arlus J. Stephens (# 478938)
Jason Veny (# 1049121)
Murphy Anderson PLLC
1401 K St. NW Suite 300
Washington DC 20005
(202) 223-2620
(202) 296-9600 (fax)
manderson@murphypllc.com
astephens@murphypllc.com
jveny@murphypllc.com

Attorneys for Plaintiff
Communications Workers of America AFL-CIO