Exhibit A to Complaint

*Communications Workers of America v. AT&T, Inc.*

Memorandum of Agreement Regarding Neutrality and Card Check Recognition

April 9, 2017- April 10, 2021

# MEMORANDUM OF AGREEMENT
# REGARDING NEUTRALITY AND CARD CHECK RECOGNITION

AT&T Inc. ("the Company") and Communications Workers of America ("the Union"), enter into this Memorandum of Agreement Regarding Neutrality and Card Check Recognition as of April 9, 2017.

**1.     Duration.** This Agreement is effective as of the date stated above, and shall remain in effect through April 10, 2021, unless extended, modified or terminated by mutual written agreement of the parties or their successors. The parties expressly understand, however, that in the event this Agreement is terminated, all of the terms hereof nevertheless shall survive said termination and remain in effect with respect to any reorganization or restructuring of any bargaining unit as a result of which management creates any new subsidiary, division, or operating entity as to which no Union representation then exists.

**2.     Applicability.**

(a). All card check procedures and any Union recognition provided for by this Agreement shall be applicable to all non-management employees of the Company effective with execution of this Agreement.

(b). As used herein, "the Company" means AT&T Inc. and all other present and future companies, divisions, subsidiaries or operating units thereof, except AT&T of Puerto Rico, Inc., AT&T of the Virgin Islands, Inc., AT&T Government Solutions, Inc., AT&T Support Services Company, Inc., and AT&T Global Com. Services Inc.

(c). As used herein, "non-management" means employees who normally perform work in non-management job titles as determined by the Company, in accordance with the statutory requirements of the National Labor Relations Act, as amended, and applicable decisions of the National Labor Relations Board and reviewing courts. If the Union disagrees with any such determination, the parties agree to submit the issues of unit definition to arbitration as set forth in paragraph 3. below, using the aforesaid statutory requirements and decisions as the governing principles. At the request of the Union, the Company will discuss with the Union neutrality as to Union representation of employees who are not defined above as "non-management."

(d). In addition to the foregoing, the parties further agree that any proposed bargaining unit shall exclude all professional, managerial, and confidential employees, guards and supervisors as defined in the National Labor Relations Act.

(e). The Company agrees that, for future divisions, subsidiaries or operating units that are not wholly owned, it will, at the request of the Union, discuss with the other owners the extension of this agreement to such divisions, subsidiaries, or operating units.

**3.     Card Check Recognition Procedure.**

(a). When requested by the Union, the Company agrees to furnish the Union lists of employees in the bargaining unit in each applicable company entity. This list of employees will include the work location, job title, and home address.

(b). The Union will give twenty-one (21) days notice for access to Company locations. Access will be limited to one sixty (60) day period in any twelve months for each unit agreed upon or determined as provided herein.

(c). (1). The Union and the Company shall meet within a reasonable period, but not to exceed ninety (90) days, after the effective date hereof for the purpose of defining appropriate bargaining units for all presently existing potential bargaining units. During this process, the Company will share job titles, job functions, work locations, and management structure with the Union representatives in order to facilitate agreements on the appropriate bargaining units. In the event that the parties are unable to agree, after negotiating in good faith for a reasonable time, upon the description of an appropriate unit for bargaining, the issue of the description of such unit shall be submitted to arbitration administered by, and in accordance with, the rules of the American Arbitration Association (AAA). The Arbitrator shall be confined solely to the determination of the appropriate unit for bargaining and shall be guided in such deliberations by the statutory requirements of the National Labor Relations Act. The parties agree that the decision of the Arbitrator shall be final and binding. The Company and the Union agree that the permanent Arbitrator to hear disputes with respect to this sub-paragraph shall be Richard Bloch. If the permanent Arbitrator cannot serve, the parties shall select an Arbitrator from a list or lists of prospective Arbitrators provided by the AAA.

(2). If either the Company or the Union believes that the bargaining unit as agreed or determined in (c). (1). above, is no longer appropriate due to organizational changes, then the parties shall meet and confer in good faith for the purpose of re-defining the appropriate unit. In the event that the parties are unable to agree, after negotiating in good faith for a reasonable time, upon the re-definition of an appropriate unit, the issue of the description of such unit shall be submitted to arbitration as provided in (c). (1).

(d). The Company agrees that the Union shall be recognized as the exclusive bargaining agent for any agreed-upon or otherwise determined bargaining unit(s) not later than ten (10) days after receipt by the Company of written notice from the AAA that the Union has presented valid authorization cards signed by a majority of the employees in such unit(s).

(e). For the purposes of determining the number of employees that constitute a majority of the bargaining unit, the employee population will be composed of only those employees employed in the bargaining unit on the earliest date which appears on the cards presented to the AAA. The cards so presented must be dated within sixty (60)

days of each other, but no earlier than the date of execution of this Agreement, and each card so presented must contain at least the language set forth in Attachment 1 hereto. The Company shall provide the AAA all employees, job titles and other information required for the AAA to verify the existence of more than 50% of employee authorizations as provided for in this Agreement.

(f). In the event the Union fails to deliver to the AAA valid authorization cards signed by a majority of employees in any aforesaid bargaining unit upon completion of its card signing effort, the Union agrees not to begin any further card signing effort in such unit for a period of one year from the date on which access was first granted as provided in (b). above.

(g). As soon as practicable after the aforesaid recognition and upon written request by the Union, the Company, or the appropriate subsidiary, division or operating unit thereof shall commence bargaining in good faith with the Union with respect to wages, hours, and other terms and conditions of employment for the employees employed within the agreed upon or otherwise determined appropriate bargaining unit.

**4.    Neutrality.**

(a). The Company agrees, and shall so instruct all appropriate managers, that the Company will remain neutral and will neither assist nor hinder the Union on the issue of Union representation.

(b). For purposes of this Agreement, "neutrality" means that management shall not, within the course and scope of their employment by the Company, express any opinion for or against Union representation of any existing or proposed new bargaining unit, or for or against the Union or any officer, member or representative thereof in their capacity as such. Furthermore, management shall not make any statements or representations as to the potential effects or results of Union representation on the Company or any employee or group of employees. The Union also agrees that, in the course of any effort by the Union to obtain written authorizations from employees as provided for in paragraph 3. (b)., above, neither the Union nor any of its officers, representatives, agents or employees will express publicly any negative comments concerning the motives, integrity or character of the Company, AT&T, Inc., or any of their officers, agents, directors or employees.

(c).  This agreement supersedes and terminates any and all other agreements, Memorandum of Understanding, commitments or statements of intent regarding neutrality or card-check procedures that may exist as of the date hereof between the Union and any Company entity.

**5.    Valid Authorization Cards.**  For purposes of this Agreement, a valid written authorization card shall state specifically that by signing the card, the employee agrees to be represented by the Union, using the language set forth in Attachment 1.

**6. Recognition for New Entities and New Work.**

(a). The Company agrees that it will give the Union reasonable advance notice, once a firm management decision has been made, of its intent to effect any reorganization or restructuring, or to engage in any new line(s) of business, as a result of which management expects to create any new subsidiary, division, or operating entity as to which no Union representation then exists.  After execution of this Agreement, should the Company acquire new companies or engage in a new line of business or enter a new market in which there is no active labor agreement or bargaining agreement in place, the parties agree that this Agreement shall apply to that acquired company or new line of business or enterprise in a new market after that company has been operating for a period of one hundred twenty (120) days.

(b). If management determines that more than fifty percent (50%) of the employees employed within an appropriate unit for bargaining by a new entity were, immediately prior to such employment, employed in a bargaining unit represented by the Communications Workers of America, the Company agrees that it shall recognize and bargain with the Union as the duly constituted bargaining representative of such bargaining unit employees, and the Union agrees to acknowledge such new entity as a Successor Employer for all applicable purposes under the labor laws of the United States and any relevant state.

(c). If management determines that fifty percent (50%) or less of the non-management work to be performed by any such new entity will consist of work previously performed by members of a pre-existing Union bargaining unit, then the Company agrees that, within a reasonable time after the said determination has been made, or concurrently with the giving of the notice referenced in paragraph 6. (a)., above, whichever is later, the Company will so inform the Union in writing. To the extent permitted by law, the Company shall presume, in making any determination as set forth in this paragraph 6., that each employee of the new entity who was a member of a pre-existing Union bargaining unit wishes to remain represented by the Union. These employees shall be counted as having signed valid authorization cards should a card signing effort be undertaken in the new entity within one year after the new entity begins operations employing such employees.

(d). Except as specified in paragraph 9., below, the Union shall retain any legal rights it may have to challenge any management decision or determination described in this paragraph 6.

7.     **Regulatory and Legislative Support.**  The Union hereby agrees to continue its support before the appropriate regulatory and legislative bodies for the Company's efforts to remain competitive in, and/or to gain entry to, all telecommunications and related markets in which the Company chooses to participate, unless the Union determines such support to be in conflict with its interests. If the Union determines such a conflict exists, the Union will promptly so notify the Company and, at the request of the Company, meet to discuss and confer on such conflict.

The Company hereby agrees to support Union efforts before regulatory and legislative bodies unless the Company determines such support to be in conflict with its interests. If the Company determines such a conflict exists, the Company will so notify the Union and will, if requested by the Union, meet to discuss and confer on such conflict.

**8. Job Offers to Employees in Existing Bargaining Units.** In connection with any reorganization, restructuring or other event that gives rise to application of the terms of this Agreement, and which involves either:

(a) the transfer of non-management work from any Union bargaining unit to any other entity of the Company or of any subsidiary of AT&T Inc., or

(b) the elimination of bargaining unit work while new jobs are created in any other entity of the Company or any subsidiary of AT&T Inc.,

the Union agrees that, once the recognition has occurred, an offer of a job in another entity to an employee in an existing bargaining unit shall have the same effect as if the same job or one of similar status and pay were offered by the employer under the collective bargaining agreement(s) for that bargaining unit. This shall include, without limitation, application of any contractual reassignment pay protection provisions and the satisfaction of any bargained-for employee right to a job offer. Except as specified in paragraph 10., below, nothing in this paragraph 8. shall be construed as a waiver by the Union of any legal rights it may have to challenge or contest the reorganization, restructuring, or other event described in 8.a. and/or 8.b. above.

**9. Dispute Resolution.** Except as to disputes referenced in paragraph 3.(c). of this Agreement, all disputes concerning the meaning or application of the terms of this Agreement shall be handled and addressed by the meeting of designated representatives of the Company and the Union. Either party may request such a meeting and each party pledges its best efforts to address any and all concerns raised as to the meaning or application of this Agreement. With the exception of matters referenced in paragraph 3.(c). above, the meaning or application of this Agreement shall not be subject to arbitration. Each party reserves its right to seek judicial or other relief provided by law to enforce this Agreement. However, the parties agree that prior to seeking such relief, they will meet and confer as set forth above.

**10. Waiver of Certain Other Claims.**

(a). The Union promises and agrees that, in connection with any arbitration provided for in this Agreement, and in connection with any legal or administrative suit, proceeding or charge arising subsequent to the effective date of this Agreement between the Union and any AT&T company, including but not limited to any proceeding before the National Labor Relations Board or its delegate, the Union hereby waives any claim, allegation or argument, and agrees to refrain from presenting this Agreement as

evidence in support of any claim, allegation or argument, that AT&T Inc. and/or any of its current or future subsidiaries, and/or their divisions, units, agents or affiliates, are or have been a single employer, joint employers, accretions or alter egos with respect to each or any of them, to the extent that any such claim, allegation or argument is based upon:

> (1) any change on or after the execution date of this Agreement, in the administration and/or control of labor relations by AT&T or any of its entities, companies, divisions, or subsidiaries; or

> (2) any change in the scope, availability to employees, or administration by management of any program or practice for the effectuation of employee-initiated transfers between or among different subsidiaries or bargaining units;

provided, however, that this paragraph shall not be construed as having any effect on the Union's right or the Company's obligation, to the extent the same may exist under applicable law and/or any preexisting collective bargaining agreement(s), to negotiate changes in the terms and conditions applicable to such transfers.

(b). The provisions of this paragraph 10. shall survive the expiration of the remainder of this Agreement, and shall have full force and effect until specifically voided by mutual written agreement of the parties.

**11.    Severability.** Should any portion of this Agreement be voided or held unlawful or unenforceable by the National Labor Relations Board or any court of competent jurisdiction, the remaining provisions shall remain in full force and effect for the duration of this Agreement.

FOR THE UNION:

By: _____
Claude Cummings Jr.
Vice President, District 6

FOR THE COMPANY:

By: _____
Joe Croci
Vice President – Labor Relations

ATTACHMENT I
Page 7 of 7

ATTACHMENT 1 TO MEMORANDUM OF AGREEMENT REGARDING CARD CHECK RECOGNITION

Communications Workers of America, AFL-CIO

I hereby join with my fellow workers in organizing a Union to better our conditions of life and secure economic justice.  I have voluntarily accepted membership in the Communications Workers of America (CWA), AFL-CIO, and declare that this union shall be my representative in collective bargaining over wages, hours and all other conditions of employment.

I understand that if CWA presents cards for recognition signed by more than 50% of the _____ employees eligible to be in the bargaining unit, (Company name) will recognize CWA as the bargaining representative of this unit without a representation election being conducted by the National Labor Relations Board and (Company name) would bargain with CWA concerning the terms of my employment and my working conditions.

I have also agreed to the membership provisions on the other side of this card.

111

