UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO<br><br>PLAINTIFF,<br>v.<br><br>AT&T INC.,<br><br>DEFENDANT. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 19-cv-01220-RC<br>)<br>)<br>)<br>)<br>) |

### DEFENDANT AT&T INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Plaintiff's Complaint seeks to compel arbitration under a Memorandum of Agreement Regarding Neutrality and Card Check Recognition ("MOA") between Defendant AT&T Inc. ("AT&T") and Plaintiff Communications Workers of America ("Plaintiff" or "Union"). Complaint Exhibit A. However, as set forth below, the Court must dismiss the Union's Complaint because: 1) the plain language of the MOA establishes that the parties did not intend to arbitrate this dispute; and 2) the court lacks subject matter jurisdiction, as the dispute involves a representational issue within the primary jurisdiction of the National Labor Relations Board ("NLRB").

### I.  STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT[1]

The Complaint seeks to compel arbitration under the parties' longstanding MOA, the most

---

[1] In this motion to dismiss, pursuant to Rule 12, AT&T and the Court assume, solely for purposes of ruling on AT&T's motion to dismiss, that the allegations in Plaintiff's Complaint and its exhibits are true. *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002). Nothing herein is or should be considered an admission by AT&T that any of the allegations are true. AT&T expressly preserves all defenses to the Complaint, both factual and legal, and the failure to assert additional defenses in this motion does not waive Defendant AT&T's right to raise such defenses in connection with a subsequent answer or motion for summary judgment.

recent version of which was executed April 9, 2017. Complaint, ¶1 and Complaint Exhibit A. Under the MOA, AT&T has agreed to neutrality and card-check organizing procedures in the event the Union seeks to organize "non-management" employees of certain AT&T entities, as defined in the MOA. Paragraph 2(c) of the MOA gives AT&T the right to determine which employees work in "non-management" job titles, and are thus eligible to be organized under the MOA's favorable card-check organizing procedures, "in accordance with the statutory requirements of the National Labor Relations Act and decisions of the National Labor Relations Board and reviewing courts." Complaint ¶17.

In June 2018, AT&T completed a merger with Time Warner. Complaint ¶14. The Union contends that AT&T's acquisition of Time Warner triggers the "non-management" applicability provisions of paragraph 2(c) of the MOA and the subsequent unit-definition procedures of paragraph 3(c)(1). Id. at ¶16. In an attempt to bootstrap the parties' dispute into the MOA's narrow arbitration clause, the Complaint characterizes the dispute as one over the "composition of the bargaining units subject to the [MOA]." *Id.*[2] However, none of the referenced provisions in paragraph 2(c) or 3(c) address how recognition is handled when AT&T acquires new entities or new work. Such acquisitions are dealt with exclusively in paragraph 6 of the MOA, entitled "Recognition for New Entities and New Work." In a stunning omission of relevant facts, the

---

[2] Under Federal labor law, certain persons are not eligible in the first instance to be organized and represented by a bargaining agent (e.g., "supervisors," "managerial" and "confidential" employees, among others). Employees otherwise eligible to be represented for purposes of collective bargaining may do so only in "a unit appropriate for such purposes." 29 U.S.C. 159. The "appropriateness" of a bargaining unit relates to whether the unit is "a readily identifiable group with common interests distinct from other employees." *Bartlett Collins Co.*, 334 NLRB 484, 486 (2001). Accordingly, disputes over the "appropriateness" of the proposed bargaining unit relate to whether the group has the requisite "community of interest" (i.e., similarities in method of wages and compensation; hours worked; supervision; qualifications, training, and skills; etc.), to be included in a single unit for purposes of bargaining. *Overnite Transportation Co.*, 322 NLRB 723, 724 (1996).

Complaint wholly fails to address or even acknowledge paragraph 6 of the MOA. Importantly, there is no arbitration provision contained in paragraph 6. Rather than providing a right to arbitration under this section, paragraph 6 states only that the Union retains "any legal rights it may have to challenge any management decision or determination" arising under paragraph 6.

Paragraph 6 references paragraph 9 of the MOA ("Dispute Resolution), which provides a non-arbitration vehicle for dispute resolution. Importantly, paragraph 9 makes clear that **only** matters specifically referenced in paragraph 3(c) of the MOA, (disputes over the "description of an appropriate unit for bargaining") are subject to arbitration. All other disputes over "the meaning or application of this Agreement **shall not be** subject to arbitration."[3] *Id.* (Emphasis added).

## II. ARGUMENT

### A. Standard of Review

In considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Alt. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although the factual allegations in a plaintiff's complaint are again treated as true, the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Twombly*, 550 U.S. at 554-555; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In deciding a 12(b)(6) motion, the Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated

---

[3] Paragraph 26 of the Complaint alleges "AT&T agreed to incorporate the Rules of the American Arbitration Association (AAA) in paragraph 3(c) of the MOA." The actual language of paragraph 3(c) of the MOA (Complaint Exhibit A) states only that "the issue of the description of [an appropriate bargaining unit] shall be submitted in accordance with the rules of the [AAA]."

3

by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).

Also, federal courts are courts of limited jurisdiction and can only adjudicate those cases that fall within Article III of the Constitution and a congressional authorization. Wright, Miller, et al, 5B Fed. Prac. & Proc. Civ. § 1350 (3d Ed. 2015). In considering a motion to dismiss for lack of jurisdiction under F.R.Civ.P. 12(b)(1), the plaintiff bears the burden of establishing the existence of jurisdiction. In deciding a challenge to subject matter jurisdiction, the court must accept as true all factual allegations in the complaint. *Erby v. United States*, 424 F. Supp. 2d 180 (D.D.C. 2006); *Grandlodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001), but may consider matters outside the pleadings as it deems appropriate. *Friends of the Earth v. EPA*, 934 F. Supp. 2d 40, 44-45 (D.D.C. 2013).

> **B.     The Complaint Should Be Dismissed For Failure To State A Claim Because The Plain Language Of Sections 6 And 9 Of The MOA Establishes The Parties Did Not Agree To Arbitrate Disputes Over "New Entities and New Work."**

It is well settled that a party cannot be required to submit to arbitration disputes it has not agreed to arbitrate. *AT&T Technologies, Inc. v. Communications of America*, 475 U.S. 643 (1986); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002). Particularly where, as here, the arbitration clause is narrow, permitting arbitration of only specific enumerated issues, there is no presumption of arbitrability as to issues that are not so enumerated. *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 572-573 (1960) (Brennan, J., concurring); *see also RDP Techs., Inc. v. Cambi AS*, 800 F. Supp. 2d 127, 139-40 (D.D.C. 2011). It is therefore incumbent on the Plaintiff to make sufficient factual allegations in the Complaint to establish a plausible claim of arbitrability. *Bell Alt. Corp. v. Twombly*, 550 U.S. at 555; *see also Hill v.*

*Wackenhut Servs. Int'l*, 865 F. Supp. 2d 84, 98-99 (D.D.C. 2012) ("Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint.").

Here, the Complaint fails to mention or address paragraph 6 of the MOA. This is the provision that exclusively governs the acquisition of "new entities and new work," such as AT&T's acquisition of Time Warner, the conceded subject of the dispute.[4] As noted above, paragraph 6 of the MOA contains no agreement to arbitrate disputes arising under that paragraph. To the contrary, the "new acquisitions" provisions in paragraph 6 expressly refer to paragraph 9 of the MOA, which narrowly limits arbitration to "disputes referenced in paragraph 3(c) of this Agreement" (and not paragraph 6 disputes). Indeed, the "Dispute Resolution" provisions in paragraph 9 twice confirm that a dispute arising under paragraph 6 is not subject to arbitration. Paragraph 9's first sentence expressly provides that, excepting disputes under 3(c), "all disputes concerning the meaning or application of the terms of [the MOA] shall be handled and addressed by the meeting of designated representatives of the Company and the Union." *Id*. The paragraph's third sentence further confirms that "with the exception of matters referenced in paragraph 3(c) above, the meaning or application of [the MOA] shall not be subject to arbitration." Accordingly, paragraph 6 of the MOA spells out a unique procedure by which the parties agreed to address new acquisitions, and this procedure does not include arbitration. Thus, the plain language of paragraph 9 of the MOA, attached as an exhibit to the Complaint but nowhere addressed or explained in the Complaint itself, expresses the intent of the parties *not* to arbitrate any disputes over AT&T's new

---

[4] Because the MOA is attached to the Complaint as an exhibit, the Court is entitled to consider it in ruling on this motion to dismiss. *See Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002); *see also Ward v. D.C. Dept. of Youth Rehab. Servs.*, 768 S. Supp. 2d 117 (D.D.C. 2011)

acquisition of Time Warner and its employees. The Complaint therefore fails to state a claim on which relief can be granted by this Court.

The D.C. Circuit has established a framework for analyzing the arbitrability of labor disputes, which it has referred to as a "trichotomy among the disputes that arise in arbitrability cases." *Nat'l R.R. Passenger Corp. v. Bos. & Me. Corp.*, 850 F.2d 756, 761 (D.C. Cir. 1988). The court summarized this "trichotomy" as follows: "Three types of arbitrability disputes typically arise: (1) formation disputes; (2) breadth disputes; and (3) duration disputes." According to the court, "it is settled that a formation dispute is generally for courts to decide;" and "similarly a breadth dispute is generally for the courts to determine" unless parties agree "plainly" to arbitrate such disputes. The present dispute falls within either of the first two categories: a formation dispute (no arbitration agreement having been formed as to new acquisitions) or a breadth dispute (new acquisitions being beyond the scope of the narrow arbitration agreement in paragraph 3(c)). Either way, the Union's Complaint demanding arbitration should be dismissed.

To similar effect is the D.C. Circuit's ruling in *UNITE HERE Local 217 v. Sage Hospitality Resources*, 642 F.3d 255 (D.C. Cir. 2011), a case which dealt with a neutrality agreement. In that case, the court clarified the judicial role in enforcing arbitration agreements, finding a presumption <u>against</u> arbitrability in two categories identified in the Supreme Court's *Howsam* decision: "(1) disputes about whether the parties are bound by a given arbitration clause; and (2) disagreements about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." 642 F.3d at 262, quoting *Howsam*, 537 U.S. at 84. Again, the present dispute fits comfortably within either of these categories, as there is no arbitration clause binding the parties with regard to new acquisitions; alternatively, to the extent there is any binding arbitration clause, it does not apply to employees of new acquisitions. *See also AT&T Techs. v. Communs. Workers*

6

*of Am.*, 475 U.S. 643, 656 (1986) ("The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty.")

Finally, contrary to the Complaint, this is not a case where the parties have agreed to submit all questions of arbitrability to an arbitrator by virtue of broadly incorporating the procedural rules of the American Arbitration Association (AAA). *Compare Mercadante v. XE Services LLC*, 78 F. Supp. 3d 131 (D.D.C. 2015) (finding agreement to arbitrate based upon incorporation of AAA rules as to "any dispute regarding interpretation or enforcement of any of the parties' rights or obligations under this Agreement"). In the present case, the only mention of the AAA rules appears in paragraph 3(c) of the MOA, where they are referenced solely as to disputes over the issue of the description of an appropriate bargaining unit. There is no broad incorporation of the AAA rules as to other disputes arising under the MOA, and there is certainly no such reference to the AAA rules in paragraphs 6 or 9 of the MOA, the exclusive provisions applicable to the acquisition of new entities and new work and disputes arising under such paragraph 6.

    **C.**    **The Complaint Must Be Dismissed Because The Subject Matter Is A Representational Issue Within The Primary Jurisdiction Of The NLRB.**

The Court of Appeals for the D.C. Circuit has recently held that courts lack jurisdiction over disputes that are "primarily representational" in nature, as opposed to "primarily contractual." *See District No. 1, Pacific Coast District, Marine Engineers' Beneficial Association, AFL-CIO v. Liberty Maritime Corp.* (hereafter "*MEBA*"), 815 F.3d 834 (D.C. Cir. 2015). "Representational" disputes, according to the court, are those which arise under the National Labor Relations Act, 29 U.S.C. §§ 151, 159 ("NLRA") provisions governing union organizing and elections, including such questions as who is eligible to be represented by such unions and what constitute appropriate bargaining units for such

7

representation. *Id*. at 839-43. Such issues lie within the primary jurisdiction of the National Labor Relations Board ("NLRB"), even where they arise under labor agreements otherwise enforceable under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *Id.* Under the Court's analysis, further discussed below, the disputes alleged in the present Complaint are plainly "representational" disputes within the meaning of the NLRA, and clearly lie within the primary jurisdiction of the NLRB.

In *MEBA,* the D.C. Circuit considered a union's petition to compel arbitration of a dispute over the duration of a collective bargaining agreement. *Id*. The court first considered whether it had jurisdiction to act on the union's complaint. *Id*., 815 F.3d at 839-843. The D.C. Circuit reviewed and agreed with the holdings of "many circuits" that "a party's mere assertion that a claim is contractual is not an automatic ticket to federal court; rather, the court must "examine the major issues to be decided and determine whether they can be characterized as primarily representational or primarily contractual." (quoting *Local Union 204, Int'l Bhd. Of Elec. Workers v. Iowa Elec. Light & Power Co*., 668 F.2d 413, 419 (8th Cir. 1982), and citing decisions to the same effect from the Sixth, Ninth, Fourth, Seventh, and Tenth circuits).

The *MEBA* court further addressed the "parameters of a claim that is primarily representational as opposed to primarily contractual," again citing cases from other circuits that previously addressed this question. 815 F.3d at 841. The court most prominently relied upon *DiPonio Constr. Co., Inc. v. Int'l Union of Bricklayers & Allied Craftworkers, Local 9*, 687 F.3d 744, 750 (6th Cir. 2012), and *Morello v. Fed. Barge Lines, Inc*., 746 F.2d 1347, 1349-50). The Sixth Circuit in *DiPonio* identified two scenarios in which a dispute will be treated as primarily representational: the first is where "the NLRB has already exercised

jurisdiction over the matter and is either considering … or has already decided the claim." *MEBA*, 815 F.3d at 841, quoting *DiPonio*, 687 F.3d at 750. The second representational scenario occurs "where the issue is an initial decision in the representation area." *Id*. The present Complaint falls within the second category.

The *MEBA* court also acknowledged a third scenario (even more directly applicable here), credited to the Eighth Circuit's holding in *Morello v. Fed. Barge Lines, Inc*., 746 F.2d at 1349-50, as follows: "A case in which the center of the dispute is a representational question, such as whether workers are 'employees' or 'supervisors' under the NLRA, but the NLRB has not yet taken up the representation question at issue." *MEBA*, 815 F.3d at 841. The D.C. Circuit opinion in *MEBA* found the *Morello* court "correctly ruled" that, "even if framed as a 'contractual' dispute, that question is one squarely within the NLRB's province." *Id*. at 843.

Ultimately, the court in *MEBA* accepted jurisdiction over the dispute in the case before it, which it found to be an entirely contractual dispute over the duration clause of a bargaining agreement. But the analytical framework adopted by the D.C. Circuit, and the court's express agreement with the Eighth Circuit holding in *Morello,* compel dismissal of the Union's complaint in the present case. The core dispute in *Morello* – whether workers were employees or supervisors – is similar to the argument that the Union makes in its Complaint – that newly acquired Time Warner employees are "non-management" and thus eligible to be organized under the MOA.[5] Complaint ¶16, 17. Just as the *Morello* court "correctly ruled" that the dispute over supervisory status was representational, *MEBA*, 815 F.3d at 843, so too is the

---

[5] In fact, both the threshold question of a job title's "management" or "non-management" status and subsequent unit determinations are primarily representational in nature.

9

dispute in the present case over eligibility to be organized under the MOA and should be dismissed by this Court for lack of subject matter jurisdiction.

To the same effect is the recent decision in *Laborers' Dist. Council v. RoadSafe Traffic Sys.*, 2018 U.S. Dist. LEXIS 41896 (S.D. Oh. 2018). There, the district court dismissed a union complaint seeking to compel arbitration under a bargaining agreement, where the core dispute was whether newly hired employees were covered by the agreement or not. Relying on the Sixth Circuit's *DiPonio* decision, also approvingly cited by the D.C. Circuit in *MEBA*, the district court found the "second scenario" outlined in *DiPonio* to be applicable: The situation "where a court – and not the NLRB – is asked to decide whether a person or group of persons is a proper collective bargaining representative in the first instance" is primarily representational and not primarily contractual. The court found the facts of the case raised "several potential issues" pertaining to the question of whether Plaintiffs indeed represented [the disputed] employees and that "Plaintiffs are not able to overcome this reality by simply referring to the claim as a breach of contract." *Id.*

In the present case, the Union's Complaint seeks to compel arbitration over what it characterizes as a "dispute over the composition of the bargaining units subject to the MOA as it relates to former Time Warner employees." Complaint ¶16. The Complaint alleges "the Union and AT&T dispute which classifications of former Time Warner employees should be included in what bargaining units for purposes of the [MOA]." The Union contends that the resolution of this dispute is governed by the language defining "non-management" (and, by corollary, "management") employees in paragraph 2(c) of the MOA and the "unit definition" procedure of paragraph 3(c). *Id.; see also* Paragraph 25 of the Complaint (referring to "disputes concerning the determination and/or redefinition of bargaining units under

Paragraphs 2(c) and 3(c)(1)-(2) of the [MOA]"). Necessarily and unequivocally, these Complaint allegations cast the dispute between the parties as a representational one. Applying the analytical framework of the D.C. Circuit in *MEBA,* the D.C. Circuit-approved holding of the Eighth Circuit in *Morello,* and the recent decision in *Laborers Dist. Council,* this Court should find that it lacks jurisdiction over the primarily representational subject matter of this dispute and dismiss the Complaint.

### III.   CONCLUSION

For each of the reasons set forth above, the Court should dismiss the Complaint for failure to state an actionable claim for compelling arbitration, pursuant to Rule 12(b)(6). Alternatively, the Court should dismiss the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

Respectfully submitted,

Dated May 31, 2019

*/s/ Maurice Baskin*
Maurice Baskin, Bar No. 248898
Stephen Sferra (*pro hac vice movant*)
Arthur T. Carter (*DC pro hac vice movant*)
LITTLER MENDELSON, PC
815 Connecticut Avenue, NW, Suite 400
Washington, DC 20006
Telephone: 202.842.3400
Facsimile: 202.842.0011
mbaskin@littler.com

*Counsel for Defendant AT&T Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2019, a copy of the foregoing Motion to Dismiss was filed with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to opposing counsel:

　　　　　　　　　　　　　　　　　　　　　　　／s/ *Maurice Baskin*
　　　　　　　　　　　　　　　　　　　　　　　Maurice Baskin

FIRMWIDE:164682736.1 061317.1704