**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

COMMUNICATIONS WORKERS OF
AMERICA, AFL-CIO,

                    Plaintiff,

     v.

AT&T INC.,

                   Defendant.

Case 1:19-cv-01220-RC

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**AND IN SUPPORT OF CROSS-MOTION TO COMPEL ARBITRATION**

**<u>INTRODUCTION AND SUMMARY</u>**

Plaintiff Communications Workers of America ("CWA" or "the Union") and Defendant AT&T Inc. are parties to a Memorandum of Agreement Regarding Neutrality and Card Check Recognition governing organizing procedures at AT&T and its subsidiaries. AT&T is refusing to arbitrate under the Agreement as to its newly acquired Time Warner operations.

The Agreement binds CWA and "AT&T Inc. and all other present and future companies, divisions, subsidiaries or operating units thereof" with five unrelated exceptions. (Doc. 1-1, Paragraph 2(b)). Paragraph 3(c) provides for arbitration to define appropriate bargaining units for purposes of voluntary "card-check" recognition. Paragraph 6 provides that where AT&T acquires a new enterprise, "this Agreement shall apply to that acquired company or new line of business or enterprise in a new market after that company has been operating for a period of one hundred twenty (120) days." Nevertheless, AT&T now claims that arbitration of bargaining units under Paragraph 3(c) is not available to as to its newly acquired Time Warner operations.

In Part I.A. of the Argument, we show that AT&T's position is meritless. Even if the Court had independent review, it would conclude that Paragraph 6's application of "this Agreement" to new operations includes the bargaining-unit arbitration in Paragraph 3(c). The Agreement does not fix a time limit on when the parties may raise issues to the Arbitrator other than "a reasonable time." That timeliness is an issue for the arbitrator. *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002). Nor does the Agreement limit the Arbitrator to existing AT&T jobs. Paragraphs 3(c)(2) and 6 both contemplate that the Arbitrator may reframe unit definitions for AT&T's "present and future" subsidiaries in the event of organizational changes.

In Part I.B., we show that the Court does not have independent review in the first place. The parties incorporated American Arbitration Association (AAA) rules, which give the Arbitrator authority to resolve disputes over arbitrability. AT&T must address its arguments to the Arbitrator, not the Court.

In Part II, we address AT&T's claim that the entire Agreement is invalid because only the National Labor Relations Board (NLRB) may define bargaining units. This claim is contrary to law. Parties may contract to define bargaining units, and arbitration of such issues is lawful under *Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 272 (1964) and *McDonnell Douglas Corp. v. NLRB*, 59 F.3d 230, 234 (D.C. Cir. 1995). Arbitral resolution of contractual bargaining units, including supervisory status, is entirely proper, especially where (as here) the parties direct the Arbitrator to apply NLRB standards. *See Office and Professional Employees Local 2 v. Washington Metropolitan Area Transit Authority*, 724 F.2d 133, 140-141 (D.C. Cir. 1983).

The Court should therefore order arbitration of the Time Warner unit-definition dispute.

## STATEMENT OF FACTS

**A**      **The Agreement**

      **1.**      **Coverage**

The Union and AT&T are parties to a Memorandum of Agreement Regarding Neutrality and Card Check Recognition (the "Neutrality Agreement" or "Memorandum of Agreement") governing union organizing procedures. This Memorandum was recently renewed as of April 9, 2017 for a term through April 10, 2021. (Doc. 1-1, Rusher Decl. ¶2.)

The Memorandum of Agreement was signed by AT&T, Inc. on behalf of "AT&T Inc. and all other present and future companies, divisions, subsidiaries or operating units thereof, except AT&T of Puerto Rico, Inc., AT&T of the Virgin Islands, Inc., AT&T Government Solutions, Inc., AT&T Support Services Company, Inc., and AT&T Global Com. Services Inc." (Doc. 1-1, Paragraph 2(b)).

The Memorandum of Agreement has been attached to, and renewed by, multiple collective bargaining agreements between CWA Districts and AT&T subsidiaries, including the 2017-2021 collective bargaining agreement between the Union and Southwestern Bell Telephone Company, AT&T Services, Inc., and DIRECTV, LLC (the Southwest CBA.") (Rusher Decl. ¶ 3; Doc. 1-2.) For example, Article 22, p. 22 of the Southwest Agreement provides: "Upon ratification, the Card Check agreement will be administered on a national basis by the CWA and AT&T." (Rusher Decl. ¶ 3; Doc. 1-2.)

      **2.**      **Non-managerial employee status: Paragraph 2(c)**

Paragraph 2(c) of the Memorandum of Agreement provides as follows:

As used herein, "non-management" means employees who normally perform work in

non-management job titles as determined by the Company, in accordance with the

statutory requirements of the National Labor Relations Act, as amended, and applicable

decisions of the National Labor Relations Board and reviewing courts. If the Union

disagrees with any such determination, the parties agree to submit the issues or unit

definition to arbitration as set forth in paragraph 3, below, using the aforesaid statutory

requirements and decision as the governing principles.  At the request of the Union, the

Company will discuss with the Union neutrality as to Union representation of employees

who are not defined above as "non-management."

### 3. Bargaining unit definition: Paragraph 3(c)

Paragraph 3(c) of the Memorandum of Agreement provides:

(c). (1). The Union and the Company shall meet within a reasonable period, but not to

exceed ninety (90) days, after the effective date hereof for the purpose of defining

appropriate bargaining units for all presently existing potential bargaining units. During

this process, the Company will share job titles, job functions, work locations, and

management structure with the Union representatives in order to facilitate agreements on

the appropriate bargaining units. In the event that the parties are unable to agree, after

negotiating in good faith for a reasonable time, upon the description of an appropriate

unit for bargaining, the issue of the description of such unit shall be submitted to

arbitration administered by, and in accordance with, the rules of the American Arbitration

Association (AAA). The Arbitrator shall be confined solely to the determination of the

appropriate unit for bargaining and shall be guided in such deliberations by the statutory

requirements of the National Labor Relations Act. The parties agree that the decision of

4

the Arbitrator shall be final and binding. The Company and the Union agree that the permanent Arbitrator to hear disputes with respect to this sub-paragraph shall be Richard Bloch. If the permanent Arbitrator cannot serve, the parties shall select an Arbitrator from a list or lists of prospective Arbitrators provided by the AAA.

(2). If either the Company or the Union believes that the bargaining unit as agreed or determined in (c). (1). above, is no longer appropriate due to organizational changes, then the parties shall meet and confer in good faith for the purpose of redefining the appropriate unit. In the event that the parties are unable to agree, after negotiating in good faith for a reasonable time, upon the re-definition of an appropriate unit, the issue of the description of such unit shall be submitted to arbitration as provided in (c). (1).

### 4.      Application to newly acquired operations: Paragraph 6

Paragraph 6, "Recognition for New Entities and New Work" provides:

6. (a). The Company agrees that it will give the Union reasonable advance notice, once a firm management decision has been made, of its intent to effect any reorganization or restructuring, or to engage in any new line(s) of business, as a result of which management expects to create any new subsidiary, division, or operating entity as to which no Union representation then exists. After execution of this Agreement, should the Company acquire new companies or engage in a new line of business or enter a new market in which there is no active labor agreement or bargaining agreement in place, the parties agree that this Agreement shall apply to that acquired company or new line of business or enterprise in a new market after that company has been operating for a period of one hundred twenty (120) days.

(b). If management determines that more than fifty percent (50%) of the employees employed within an appropriate unit for bargaining by a new entity were, immediately prior to such employment, employed in a bargaining unit represented by the Communications Workers of America, the Company agrees that it shall recognize and bargain with the Union as the duly constituted bargaining representative of such bargaining unit employees, and the Union agrees to acknowledge such new entity as a Successor Employer for all applicable purposes under the labor laws of the United States and any relevant state.

(c). If management determines that fifty percent (50%) or less of the nonmanagement work to be performed by any such new entity will consist of work previously performed by members of a pre-existing Union bargaining unit, then the Company agrees that, within a reasonable time after the said determination has been made, or concurrently with the giving of the notice referenced in paragraph 6. (a)., above, whichever is later, the Company will so inform the Union in writing. To the extent permitted by law, the Company shall presume, in making any determination as set forth in this paragraph 6., that each employee of the new entity who was a member of a preexisting Union bargaining unit wishes to remain represented by the Union. These employees shall be counted as having signed valid authorization cards should a card signing effort be undertaken in the new entity within one year after the new entity begins operations employing such employees.

(d). Except as specified in paragraph 9., below, the Union shall retain any legal rights it may have to challenge any management decision or determination described in this

paragraph 6.

## 5.    Reservation of bargaining-unit arbitration: Paragraph 9

Paragraph 9 provides:

Dispute Resolution. Except as to disputes referenced in paragraph 3. (c). of this Agreement, all disputes concerning the meaning or application of the terms of this Agreement shall be handled and addressed by the meeting of designated representatives of the Company and the Union. Either party may request such a meeting and each party pledges its best efforts to address any and all concerns raised as to the meaning or application of this Agreement. With the exception of matters referenced in paragraph 3.(c). above, the meaning or application of this Agreement shall not be subject to arbitration. Each party reserves its right to seek judicial or other relief provided by law to enforce this Agreement. However, the parties agree that prior to seeking such relief, they will meet and confer as set forth above.

## B.    The Present Dispute

In June 2018, AT&T successfully closed a merger with Time Warner. (Rusher Decl. ¶ 5.) The Union and AT&T dispute which classifications of former Time Warner employees should be included in what bargaining units for purposes of the Memorandum of Agreement. (Rusher Decl. ¶ 5, and Ex. B, March 6, 2019 letter from CWA Organizing Director Sandy Rusher to AT&T Vice-President for Labor Relations Joseph Croci, and March 8, 2019 letter from Croci to Rusher.) The Union contends that AT&T's Time Warner acquisition triggers the unit-definition procedure of Paragraph 3(c)(1), or in the alternative, that it constitutes an organizational change that requires redefinition of the units under Paragraph 3(c)(2).

On March 6, 2019, CWA Organizing Director Sandy Rusher demanded arbitration before the parties designated Arbitrator Richard I. Bloch:

Dear Joe:

Based upon the positions you took during our February 20, 2019 discussion about appropriate bargaining units and related work and job titles resulting from AT&T's acquisition of Time Warner, now known as WarnerMedia, CWA is demanding arbitration pursuant to Sections 2 and 3 of our Memorandum of Agreement Regarding Neutrality and Card Check Recognition (the Agreement).

Specifically, you contend that the Agreement applies only to jobs that are substantially similar to bargained for titles and, based thereon; you identified at most 82 employees from a total of 22,000 domestic Time Warner employees to whom the Agreement applies. CWA vehemently disagrees with your contention and applicability determination. Based thereon, and without waiving any of its rights, which it expressly reserves, CWA is submitting the issues of unit(s) definition and appropriateness to arbitration pursuant to Sections 2(c) and 3(c) of the Agreement.

In that regard, I have enclosed a letter from CWA to Arbitrator Richard Bloch advising him of the demand for arbitration and seeking his dates of earliest availability.

(Rusher Decl. ¶ 5, and Ex. B, March 6, 2019 letter from CWA Organizing Director Sandy Rusher to AT&T Vice-President for Labor Relations Joseph Croci.)

On March 8, 2019, AT&T on behalf of itself and its operating subsidiaries, notified Arbitrator Bloch that it refused to arbitrate, claiming that "the current dispute regarding the meaning and application of the Agreement is excluded from arbitration under the Agreement."

(Rusher Decl. ¶ 5, and Ex. B, March 8, 2019 letter from AT&T Vice-President for Labor Relations Joseph Croci to CWA Organizing Director Sandy Rusher.)

On April 12, 2019, the Union reiterated its demand for arbitration. (Rusher Decl. ¶ 5, and Ex. B, April 12, 2019 letter from CWA Special Counsel to Arbitrator Richard I. Bloch.)

On April 15, 2019, AT&T on behalf of itself and its operating subsidiaries, again notified Arbitrator Bloch that it refused to arbitrate. (Rusher Decl. ¶ 5, and Ex. B, April 15 letter from AT&T Vice-President for Labor Relations Joseph Croci to Arbitrator Richard I. Bloch.)

On April 16, 2019, Arbitrator Bloch cancelled any proffered dates and awaited further notice should the parties jointly determine to proceed. (Rusher Decl. ¶ 5, and Ex. B, April 16 letter to the parties from Arbitrator Richard I. Bloch.)

## C. AAA Labor Arbitration Rules

Paragraph 3(c) of the Agreement provides in relevant part: "In the event that the parties are unable to agree, after negotiating in good faith for a reasonable time, upon the description of an appropriate unit for bargaining, the issue of the description of such unit shall be submitted to arbitration administered by, and in accordance with, the rules of the American Arbitration Association (AAA)."

The AAA Rules provide as follows

1.     Agreement of Parties

The parties shall be deemed to have made these rules a part of their arbitration

agreement whenever, in a collective bargaining agreement or submission, they

have provided for arbitration by the American Arbitration Association (hereinafter

the AAA) or under its rules. These rules and any amendment of them shall apply

in the form in effect at the time the administrative requirements are met for a

demand for arbitration or submission agreement received by the AAA. The

parties, by written agreement, may vary the procedures set forth in these rules.

* * *

3. Jurisdiction

      a.      The arbitrator shall have the power to rule on his or her own jurisdiction,

including any objections with respect to the existence, scope, or validity of the arbitration

agreement.

      b.      The arbitrator shall have the power to determine the existence or validity

of a contract of which an arbitration clause forms a part. Such an arbitration clause shall

be treated as an agreement independent of the other terms of the contract. A decision by

the arbitrator that the contract is null and void shall not for that reason alone render

invalid the arbitration clause.

(Rusher Decl., Ex. A). These provisions have been included in AAA Labor Arbitration Rules

since at least 2013. *See id.*, p, 1*; Morales v. Rochdale Village Inc.*, 15 CV 502 (RJD), 2017 WL

9250352 *3 (E.D.N.Y. Aug. 16, 2017).

## **JURISDICTION**

Suits for to compel arbitration under labor agreements arise under Section 301 of the

Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). The LMRA is designed to

promote labor arbitration. *See Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451-459 (1957).

Organizing agreements governing "card-check" recognition are enforceable under § 301

of the LMRA. This is so even though the contracting union is not yet the exclusive

representative of the employer's employees. *See Local 82, Service Employees Int'l Union v. Pritchard Industries*, 827 F.Supp. 35, 36-37 & n.3 (D.D.C. 1993), *citing Retail Clerks v. Lion Dry Goods*, 369 U.S. 17, 28 (1962).  *See also Hotel & Restaurant Employees Local 217 v. J.P. Morgan Hotel*, 996 F.2d 561, 566 (2d Cir. 1993); *Hotel Employees & Rest. Employees Union, Local 57 v. Sage Hospitality Res.,* 390 F.3d 206, 219 (3d Cir. 2006); *Adcock v. Freightliner, Inc.,* 550 F.3d 369, 375-377 (4th Cir. 2008); *United Steel Workers v. TriMas Corp.*, 531 F.3d 531, 537-538 (7th Cir. 2008); *Hotel & Restaurant Employees Local 2 v. Marriott Corp.*, 961 F.2d 1464, 1469-70 (9th Cir. 1993).

## STANDARD OF REVIEW

### A.      FAA Procedures

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq. governs all employment contracts outside the transportation industry. *Circuit City Stores v. Adams*, 532 U.S. 105 (2001). The FAA now applies to labor arbitrations under collective-bargaining agreements. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 269 n.10 (2009); *Sheet Metal Workers' Int'l Ass'n v. United Transportation Union*, 767 F.Supp.2d 161, 168 (D.D.C. 2011).  A motion to compel arbitration is analyzed under the same standards as a Rule 56 motion. *Wolff v. Westwood Management*, 503 F.Supp.2d 274, 278 (D.D.C. 2007) *aff'd* 558 F.3d 517, 520-521 (D.C. Cir. 2009).

### B.      The Court Does Not Decide the Merits.

The issue on this motion is not the merits of the parties' underlying dispute. The sole issue is whether the parties are bound to arbitrate that dispute. "[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T Technologies v. Communications Workers*, 475 U.S.

643, 649 (1986), *citing Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582

(1960). "'[A]n order to arbitrate [a] particular grievance should not be denied unless it may be

said with positive assurance that the arbitration clause is not susceptible of an interpretation that

covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Air Line Pilots*

*Ass'n v. Fed. Express Corp.*, 402 F.3d 1245, 1248 (D.C. Cir. 2005) (*quoting Warrior & Gulf,*

363 U.S. at 582-583.)

C.    **Expedited Resolution of Motion to Compel Arbitration**

The Court should decide the motion summarily. The overriding federal policy in labor

arbitration is to prevent the delays of extended court litigation. "Typically, district courts should

establish an expedited schedule for consideration of petitions to enforce or set aside arbitration

awards. . ." *Gilmore v. Int'l Union of Operating Engineers*, 899 F.Supp. 652, 658 (D.D.C. 1995)

*quoting District 17, United Mine Workers v. Apogee Coal Co,*,13 F.3d 134, 138 (4th Cir. 1993).

"[T]ypically such petitions may be resolved promptly on motions for summary judgment based

on the record from the arbitration proceedings without the necessity of discovery. . ." *Apogee*

*Coal,* 13 F.3d at 138. This expedited procedure is necessary for federal labor arbitration policy.

"If arbitration is to continue to hold the significant position it now possesses, judicial

enforcement of the decision . . . must follow surely and swiftly." *Id.*

## ARGUMENT

**I.     The Arbitrator Has Jurisdiction to Decide this Dispute.**

**A.     Even if the Court Had Independent Review, AT&T's Position Lacks Merit.**

Even if this Court had the authority to decide arbitrability, it would reject AT&T's claim.

**1.     Paragraph 6 on new facilities incorporates the Agreement, including arbitration under Paragraph 3(c).**

This dispute is over the scope of the Arbitrator's authority in the "determination of the appropriate unit for bargaining" under Paragraph 3(c)(1) and the "re-definition of an appropriate unit" due to organizational changes under Paragraph 3(c)(2).

AT&T contends that the Arbitrator has no power to resolve bargaining units except as to units existing as of the execution of the Agreement. In particular, AT&T claims the Arbitrator may not declare what bargaining units the 22,000 employees of the newly acquired Time Warner operation fit within. It claims that Paragraph 6 ("Recognition of New Entities and New Work") "contains no agreement to arbitrate disputes arising under that paragraph." AT&T Memorandum in Support of Motion to Dismiss, Doc. 10-1 at p. 5.

This is demonstrably wrong. In Paragraph 6, the parties incorporated the whole of the Agreement as to newly acquired operations: "After execution of this Agreement, should the Company acquire new companies or engage in a new line of business or enter a new market in which there is no active labor agreement or bargaining agreement in place, the parties agree that this Agreement shall apply to that acquired company or new line of business or enterprise in a new market after that company has been operating for a period of one hundred twenty (120) days." (Emphasis supplied.)

Paragraph 6's application of "this Agreement" to new operations necessarily incorporates

the arbitration provision of Paragraph 3(c), absent an express exclusion. *See American Postal Workers Union v. U.S. Postal Service*, 65 F.Supp.3d 134, 143 (D.D.C. 2014) (where settlement agreement incorporated main collective-bargaining agreement, the agreement incorporated the arbitration provision); *Tower Ins. Co. of N.Y. v. Davis/Gilford*, 967 F.Supp.2d 72, 81-82 (D.D.C. 2013) (parties incorporated arbitration by incorporating agreement containing it.)

Paragraph 6(d) makes it clear that the Union does not waive any rights to challenge any management decision "except as provided in paragraph 9." AT&T invokes Paragraph 9, which generally bars arbitration. But AT&T ignores that Paragraph 9 preserves the bargaining-unit arbitration right of Paragraph 3(c): "with the exception of matters referenced in paragraph 3.(c) above, the meaning or application of this Agreement shall not be subject to arbitration." (Emphasis supplied.) The obvious meaning of Paragraph 6 is that, after a grace period of 120 days, the parties shall confer about defining bargaining units for newly acquired operations, with a right of arbitration to resolve disputes.

> **2.      Paragraph 3(c)(2) contemplates bargaining-unit definition for newly acquired operations.**

AT&T claims that Paragraph 3(c) arbitration is a dead letter for any units that were not in existence when the Agreement was executed. It claims that the directive for the parties to discuss pre-existing units "within 90 days" of the Agreement's effective date limits the Arbitrator's jurisdiction to those pre-existing units, with no authority over subsequently acquired or changed operations. (Rusher Decl. ¶ 5, and Ex. B, March 8, 2019 letter from AT&T Vice-President for Labor Relations Joseph Croci to CWA Organizing Director Sandy Rusher.)

That misrepresents Paragraph 3(c). Paragraph 3(c)(1) gives the parties 90 days to commence discussions over bargaining units. But it imposes no fixed temporal limit for invoking

the arbitrator's resolution of unit disputes. These issues may be brought to the arbitrator "within a reasonable time." What constitutes a reasonable time is an issue for the arbitrator- whether "prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate" have been satisfied. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). Whether the parties have satisfied a duty to negotiate, and when that ripens into an arbitrable dispute, are gateway questions for the arbitrator. *See also District No. 1, Pacific Coast Dist., Marine Engineers' Beneficial Ass'n v. Liberty Maritime Corp.*, 330 F.Supp.3d 451, 459-460 (D.D.C. 2018) ("whether the parties have complied with a good faith negotiation provision that is a condition precedent to arbitration, . . . is a question for the arbitrators."); *M.R.S. Enters., Inc. v. Sheet Metal Workers Local 40*, 429 F.Supp.2d 72, 80 (D.D.C. 2006) (court must "defer to the arbitration board's decision regarding whether a deadlock [a condition for arbitration] was reached" because "procedural questions ... are presumptively not for the judge, but for the arbitrator[ ] to decide").

Nor does the Agreement limit the Arbitrator to that small group of Time Warner employees who fit into existing AT&T jobs. Paragraphs 3(c)(2) and 6 give the Arbitrator authority to redefine the Company's unit structure in the event of organizational changes. The "Company" bound by the Agreement is "AT&T Inc. and all other present and future companies, divisions, subsidiaries or operating units thereof [with five named exceptions.]"(emphasis supplied.)[1] So when AT&T acquired a new Time Warner subsidiary, this organizational change is subject to arbitration to deal with the change in "the Company's" bargaining units.

---

[1] Because AT&T has authority to make promises on behalf of its subsidiaries, this contract is binding on those subsidiaries even if they did not separately sign the Agreement. *U.S. v. Western Elec.*, 797 F.2d 1082, 1087-88 (D.C. Cir. 1986) (parent AT&T's agreement in antitrust case on behalf of its subsidiaries bound all subsidiaries, including those that did not sign the agreement.)

### 3.     Doubts must be resolved in favor of arbitration.

Even if the Court had independent review, it would have to resolve any doubts about the scope of the arbitration clause in favor of arbitration. "In the absence of any express provision excluding a particular grievance from arbitration ... only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *AT&T Techs. v. Communications Workers*, 475 U.S. 643, 654 (1986) (*quoting United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584–585 (1960)). If the Court is faced with two plausible readings of an arbitration clause, it must choose the reading that promotes arbitration. When an arbitration clause "is 'equally consistent with opposing interpretations . . . we cannot say with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute, [we] must resolve any doubts in favor of arbitration." *Bakery Workers Local 3-G v. Kellogg Co.,* 904 F.3d 435, 444-445 (6th Cir. 2018).

### B.     AT&T Agreed to Submit the Issue of Arbitrability to the Arbitrator by Incorporating AAA Rules.

In any case, the Court does not have authority to resolve this issue. The parties agreed to allow the Arbitrator to decide the issue of arbitrability by incorporating American Arbitration Association (AAA) rules.

### 1.     Parties may agree to submit arbitrability to the arbitrator.

Normally, "whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance," is a question for judicial determination unless the parties "clearly and unmistakably provide otherwise." *AT&T Techs.*, 475 U.S. at 649.

However, the parties may agree to submit the issue of arbitrability itself to the Arbitrator by "clearly and unmistakably provid[ing]" for it. "As Professor Cox explained many years ago,

'[a] specific stipulation giving the arbitrator power to decide all questions of arbitrability is in substance a promise to submit to arbitration all questions concerning the meaning of the arbitration clause. There is no doubt about the effectiveness of such a stipulation.'" *Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post*, 959 F.2d 288, 291 (D.C. Cir. 1992), *quoting* Cox, *Reflections Upon Labor Arbitration*, 72 Harv.L.Rev. 1482, 1508 (1959).

### 2.      Parties' incorporation of AAA Rules is express consent to the Arbitrator's resolution of a dispute over his own authority.

That is what happened here. AT&T agreed to incorporate the Rules of the American Arbitration Association (AAA) in Paragraph 3(c). The American Arbitration Association's Labor Arbitration Rules provides "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." (AAA Rule 3(c); Rusher Decl. Ex. A)

Incorporation of arbitral rules that give the Arbitrator authority to decide arbitrability constitutes the requisite "clear and unmistakable" consent to that authority. *Chevron Corp. v. Ecuador*, 795 F.3d 200, 207-208 (D.C. Cir. 2015) (incorporation by reference of the UNCITRAL rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability).

This applies to incorporation of AAA rules. *District No. 1, Pacific Coast District, Marine Engineers' Beneficial Ass'n v. Liberty Maritime Corp.*, No. 18-1618 (RJL), 2019 WL 224291 *5 (D.D.C. Jan. 14, 2019) ("other judges on this Court have repeatedly held that parties' incorporation of the AAA Rules by reference in their arbitration agreements constitutes clear and unmistakable evidence that the parties intended to submit the arbitrability determination to the arbitrator himself. . . . Thus, where, as here, the parties' agreement expressly addresses the issue of how the arbitrator is appointed and adopts AAA rules allowing the arbitrator to be the judge of

17

his own authority, Courts shall not enter!"); *Sakyi v. Estee Lauder*, 308 F.Supp.3d 366, 378

(D.D.C.2018) (same); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 244 F.Supp.3d

100, 111-112 (D.D.C. 2017) *aff'd* 760 Fed.Appx. 1 (D.C. Cir. 2019); *Mercadante v. XE Services,

LLC*, 78 F.Supp.3d 131, 138-139 (D.D.C. 2015); *Haire v. Smith, Currie, & Hancock LLP*, 925 F.

Supp. 2d 126, 133 (D.D.C. 2013) (same).[2]

> ### 3.      The Arbitrator has jurisdiction to decide his own authority under AAA Rules even when the arbitration clause is limited.

AT&T's only argument to avoid the AAA Rules is to claim that they do not apply if there

are any limitations on the arbitration clause. According to AT&T, the fact that the Agreement

limits the Arbitrator's authority to bargaining-unit definition prevents the Arbitrator from

deciding <u>which</u> bargaining units the parties gave him authority to define. AT&T Memorandum in

Support of Motion to Dismiss, Doc. 10-1 at p. 7.

That is not the law in this Circuit. In *Chevron Corp. v. Ecuador*, 795 F.3d 200, 207-208

(D.C. Cir. 2015), the Court held that incorporation of the UNCITRAL rules bound the parties to

arbitrate arbitrability, even though the plaintiff claimed that its case fell under an exception to the

treaty's arbitration provision. The D.C. Circuit held that the district court had correctly declined

to address whether the plaintiff's claims fell within that exception because the treaty was "not

---

[2]This is also the consensus of other federal Circuits. *See also Halliburton Energy Services, Inc. v. Ironshore Specialty Insurance Co.*, 921 F.3d 522, 537-538 (5th Cir. 2019); *JPay, Inc. v. Kobel*, 904 F.3d 923, 937 (11th Cir. 2018); *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1245 (10th Cir. 2018); *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 396-397 (2d Cir. 2018); *Galilea, LLC v. AGCS Marine Insurance Co.*, 879 F.3d 1052, 1060 (9th Cir. 2018) (in a contract between sophisticated parties, the "incorporation of the AAA rules [into an arbitration agreement] constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."); *Eckert/Wordell Architects  v. FJM Props. of Willmar*, 756 F.3d 1098, 1100 (8th Cir. 2014*); Awuah v. Coverall N. Am.*, 554 F.3d 7, 11–12 (1st Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1372–73 (Fed.Cir. 2006).

silent on who decides arbitrability." *Id.* "There was no need for the District Court to independently determine that [the plaintiff's] suits satisfied the [treaty's] parameters once it had concluded that the parties had delegated this task to the arbitrator." *Id.*, 793 F.3d at 208.

The *Chevron* Court, 795 F.3d at 208, approved *Oracle America v. Myriad Group A.G.*, 724 F.3d 1069, 1075-76 (9th Cir. 2013), which also rejected the argument that AT&T makes here. In *Oracle America*, the party opposing arbitration argued that, because the arbitration clause contained a "carve-out" exempting certain categories of dispute from arbitration, the AAA Rules did not give the arbitrator authority to decide arbitrability as they might if the arbitration agreement been broad and unlimited. The Ninth Circuit rejected this argument: "Oracle's argument conflates the scope of the arbitration clause, *i.e.*, which claims fall within the carve-out provision, with the question of who decides arbitrability." 724 F.3d at 1075-76. The Ninth Circuit held in *Oracle America* that the "federal majority rule" (that AAA rules commit arbitrability to the arbitrator) applies equally whether or not an arbitration agreement contains exceptions and carve-outs.[3] The fact that Arbitrator Bloch's jurisdiction may be limited does not change the fact that the parties authorized <u>him</u> under the AAA rules to decide what claims fall within that jurisdiction. *See id.; see also Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1291-92 (10th Cir. 2017) (citing *Chevron* and *Oracle America*; AAA Rules give the arbitrator authority to decide his own jurisdiction even when the arbitration clause contains exceptions.)

The Supreme Court recently made it clear that an arbitrator's ruling as to his or her own jurisdiction under a limited arbitration clause is subject to the same deference due any other

---

[3]The Ninth Circuit in *Oracle America* rejected *Turi v. Main St. Adoption Servs.,* 633 F.3d 496, 511 (6th Cir. 2011) *abrogated by Henry Schein v. Archer and White Sales*, ___ U.S. ____, 139 S.Ct. 524, 528 (2019) and *James & Jackson v. Willie Gary*, 906 A.2d 76 (Del. 2006) as inconsistent with the federal rule.

issue. In *Henry Schein v. Archer and White Sales*, ___ U.S. ____139 S.Ct. 524, 528 (2019), the

Court recognized: "The rules of the American Arbitration Association provide that arbitrators

have the power to resolve arbitrability." In *Henry Schien*, the contract incorporated AAA rules,

but contained a carve-out for claims for injunctive relief. The plaintiff argued that its claim

entailed a claim for injunctive relief, and was therefore outside the limited scope of the

arbitration clause. The Fifth Circuit agreed, holding that courts could independently resolve the

issue of arbitrability where it believed the arbitrator's assertion of jurisdiction under AAA Rules

was "wholly groundless." *Henry Schein v. Archer and White Sales,* 878 F.3d 488 (5th Cir. 2017).

The Supreme Court reversed, holding that courts have no independent review over arbitrability

decisions delegated to an arbitrator, even if the court believes that the arbitrator's assertion of

jurisdiction is "wholly groundless." *Henry Schein,* 139 S.Ct. at 528.

It follows that the Arbitrator must decide whether Time Warner operations are subject to

his authority to frame bargaining units under Paragraphs 2, 3, 6 and 9.

## II.     Arbitration of Contractual Bargaining Units Is Not Barred by NLRB Jurisdiction.

Next, AT&T argues that <u>any</u> arbitration of contractual bargaining units is an illegal

encroachment on the National Labor Relations Board's (NLRB's) authority. This is an attempt to

repudiate its <u>entire</u> contract, both as to its pre-existing units as well any future ones.

### A.     The Arbitrator Decides Challenges to the Contract as a Whole.

First, this is also an argument for the Arbitrator. The Arbitrator has authority to decide

challenges to the validity of the contract as a whole. AT&T does not question the validity of the

arbitration clause itself. Under both AAA Rule 3(b) and *Buckeye Check Cashing v. Cardegna*,

546 U.S. 440, 444 (2006), arbitrators have authority in the first instance to consider "challenges

[to] the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently  induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *See also Sheet Metal Workers' Intern. Ass'n v. United Transp. Union*, 767 F.Supp.2d 161, 170 (D.D.C. 2011).

> **B.    NLRB Jurisdiction Does Not Bar Arbitration of Contractual Units.**

AT&T's argument is wrong in any event. Courts must order arbitration over contractual disputes over the scope of a bargaining unit, even where the issue overlaps with the NLRB's authority over union representation. *Carey v. Westinghouse Elec. Corp.,* 375 U.S. 261, 272 (1964) (holding that union could compel arbitration over unit scope: "However the dispute be considered-whether one involving work assignment or one concerning representation-we see no barrier to use of the arbitration procedure.") Following *Carey*, the D.C. Circuit has repeatedly held that parties to a labor agreement may arbitrate issues over the definition of contractual units. In *McDonnell Douglas Corp. v. NLRB*, 59 F.3d 230, 234 (D.C. Cir. 1995), the Court held: "The Board has never suggested that a union and employer cannot contractually bind each other as to the scope of the bargaining unit. In fact the Board remarked in this very case that it has a policy of encouraging unions and employers to enter into such agreements." The D.C. Circuit followed "several cases in which an employer has been compelled, pursuant to a collective bargaining agreement, to arbitrate a dispute about the agreed-upon scope of the bargaining unit." *McDonnell Douglas*, 59 F.3d at 234 (*citing District 37 of Int'l Ass'n of Machinists v. Lockheed Eng'g*, 897 F.2d 768 (5th Cir. 1990) and *Concourse Village, Inc. v. Local 32E, Service Employees Int'l Union*, 822 F.2d 302, 304-05 (2d Cir. 1987)).

Arbitral resolution of bargaining-unit inclusions, including disputes over supervisory

status, are entirely proper. In *Office and Professional Employees Local 2 v. Washington Metropolitan Area Transit Authority*, 724 F.2d 133, 140-141 (D.C. Cir. 1983), the Court held it owed the same deference to an arbitration award defining the scope of a contractual unit, including supervisory status, as it did to any other arbitral decision. Where (as CWA and AT&T have done here in Paragraphs 2 and 3), the parties direct the arbitrator to apply NLRB standards, there is no reason for courts to disturb an arbitrator's resolution of a unit issue. *Id.*

For this reason, the D.C. Circuit has vacated earlier NLRB orders against union efforts to arbitrate new bargaining-unit definitions to respond to organizational changes. *Retail Clerks Local 588 v. NLRB*, 565 F.2d 769, 774-775 (D.C. Cir. 1977) ("we find the Supreme Court's encouragement of arbitration in [*Carey*] that case persuasive. At the time Local 588 invoked the use of the contractual grievance-arbitration procedure, a resulting private, consensual resolution of the strictly contractual matters involved could have aided the disputants in resolving their disagreement fully without resort to the Board, or at least could have reached a conclusion necessary to allow the Board's subsequent determination of the unit questions to end the dispute in its entirety.") As a result, the NLRB now agrees that where the parties have agreed to a consensual "card check" procedure, the NLRB will honor arbitration as an alternative to NLRB representation proceedings. *Verizon Information Systems*, 335 NLRB 558, 559 (2001).

AT&T's argument contradicts the consensus that unions may properly arbitrate bargaining units in private organizing agreements, even though the unit definitions may have representational significance. *See Hotel & Restaurant Employees Local 217 v. J.P. Morgan Hotel*, 996 F.2d 561, 566 (2d Cir. 1993) ("Even were a dispute representational in nature, an arbitrator acting pursuant to a contract can make the initial decision on the merits, *see Carey v.*

*Westinghouse Elec. Corp.*, 375 U.S. 261, 272 (1964).”); *AK Steel Corp. v. United Steelworkers*, 163 F.3d 403, 407 (6th Cir. 1998); *United Steel Workers v. TriMas Corp.*, 531 F.3d 531, 537-538 (7th Cir. 2008); *Hotel Employees, Local 2 v. Marriott Corp.*, 961 F.2d 1464, 1468 (9th Cir. 1992); *see also Georgetown Hotel v. NLRB*, 835 F.2d 1467, 1470-71 (D.C. Cir. 1987) (employer may elect to be bound by card check procedure in lieu of Board election); *Local 82, Service Employees Union v. Pritchard Industries*, 827 F.Supp. 35, 36-37 & n.3 (D.D.C. 1993).

AT&T’s claim that the entire Agreement is unlawful is therefore meritless.

## CONCLUSION

The Court should deny Defendant AT&T’s Motion to Dismiss. The Court should grant Plaintiff CWA’s Cross-Motion to Compel Arbitration, and order Defendant AT&T, Inc. to proceed to arbitration of the CWA’s March 6 and April 12, 2019 demands before Arbitrator Richard I. Bloch.

Respectfully submitted,

/s Michael T. Anderson

Michael T. Anderson (# 459617)
Arlus J. Stephens (# 478938)
Jason Veny (# 1049121)
Murphy Anderson PLLC
1401 K St. NW Suite 300
Washington DC 20005
(202) 223-2620
(202) 296-9600 (fax)
manderson@murphypllc.com
astephens@murphypllc.com
jveny@murphypllc.com

Attorneys for Plaintiff
Communications Workers of America AFL-CIO

**CERTIFICATE OF SERVICE**

The undersigned certifies that on June 13, 2019, I electronically filed the foregoing with the Clerk of Court for the United States District Court for the District of Columbia by using the appellate CM/ECF system. All participants who have appeared in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system:


/s Michael T. Anderson