# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| |
|---|
| COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, |
| |
| Plaintiff, |
| |
| v. |
| |
| AT&T INC., |
| |
| Defendant. |

Case 1:19-cv-01220-CN

## PLAINTIFF'S REPLY MEMORANDUM
## IN SUPPORT OF CROSS-MOTION TO COMPEL ARBITRATION

In this Reply, we track the structure of our Opening Motion to Compel Arbitration.

In Part I.A. of this Reply, we show that Paragraph 6's application of "this Agreement" to new operations includes the bargaining-unit arbitration in Paragraph 3(c). Furthermore, Paragraph 3(c)(2) contemplates that the Arbitrator may reframe unit definitions for AT&T's "present and future" subsidiaries in the event of organizational changes. AT&T may not override this language simply by claiming that it disagrees with the Union's reading. Nor may AT&T claim that, because this may be the first large-scale dispute arising under this language, that the absence of past disputes forms some "bargaining history" that precludes the Union's demand.

In Part I.B., we show that the Court does not have independent review in the first place. The parties incorporated AAA rules, which give the Arbitrator authority to resolve disputes over the limitations of his authority. The D.C. Circuit held in *Chevron Corp. v. Ecuador*, 795 F.3d 200, 207-208 (D.C. Cir. 2015) that, where the parties agree to such rules, a contractual limitation on an arbitrator's jurisdiction does not divest his power to decide whether the case fits within the exception. To distinguish *Chevron*, AT&T can only propose an undefined, *ad hoc* distinction

between "broad clauses with exceptions" and "narrow clauses with exceptions." This confuses the boundaries on an arbitrator's authority—which exist in every case—with the parties' agreement that the Arbitrator has "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." AAA Rule 3(a). If AT&T had wanted to prevent arbitral decision of this issue, it should not have agreed to incorporate AAA Rules.

In Part II, we address AT&T's claim that the entire Agreement is invalid because only the National Labor Relations Board (NLRB) may define bargaining units. At the threshold, AT&T ignores that this attack on the validity of the Agreement must be made to the Arbitrator. *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 444 (2006). AT&T seizes on general language in *Dist. No. 1, Marine Eng'rs' Beneficial Ass'n (MEBA) v. Liberty Mar. Corp.*, 815 F.3d 834, 839 (D.C. Cir. 2016) as authority that all agreements to arbitrate the scope of bargaining units are invalid. *MEBA* did no such thing. AT&T claims the *MEBA* opinion's discussion of contractual versus representational claims has *sub silentio* overruled *Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 272 (1964), *McDonnell Douglas Corp. v. NLRB*, 59 F.3d 230, 234 (D.C. Cir. 1995), *Office and Professional Employees Local 2 v. WMATA*, 724 F.2d 133, 140-141 (D.C. Cir. 1983), and *Retail Clerks Local 588 v. NLRB*, 565 F.2d 769, 774-775 (D.C. Cir. 1977). This is not the law. Even if AT&T's untenable reading were correct, the panel decision in *MEBA* could not overrule prior Circuit law. *See FedEx Home Delivery v. NLRB*, 849 F.3d 1123, 1127 n.3 (D.C. Cir. 2017) ("when a conflict exists within our own precedent," a court is "bound by the earlier" of the two conflicting decisions.)

2

## ARGUMENT ON REPLY

**I.     The Arbitrator Has Jurisdiction to Decide this Dispute.**

**A.     Even if the Court Had Independent Review, AT&T's Position Lacks Merit.**

**1.     Paragraph 6 on new facilities incorporates the Agreement, including arbitration under Paragraph 3(c).**

AT&T contends that Paragraph 6 (relating to newly acquired operations) does not provide for arbitration of newly-acquired units. AT&T Opp., Doc. 17 at 7.

This is demonstrably wrong. In Paragraph 6, the parties incorporated the whole of the Agreement as to newly acquired operations: "After execution of this Agreement, should the Company acquire new companies or engage in a new line of business or enter a new market in which there is no active labor agreement or bargaining agreement in place, the parties agree that this Agreement shall apply to that acquired company or new line of business or enterprise in a new market after that company has been operating for a period of one hundred twenty (120) days." As we showed in our opening brief, Paragraph 6's application of "this Agreement" to new operations incorporates the arbitration provision of Paragraph 3(c), absent an express exclusion. *See American Postal Workers Union v. U.S. Postal Service*, 65 F.Supp.3d 134, 143 (D.D.C. 2014) (where side agreement incorporated main collective-bargaining agreement, the agreement incorporated its arbitration provision). AT&T disregards this law.

AT&T invokes Paragraph 9, which generally bars arbitration. But AT&T ignores that Paragraph 9 preserves the bargaining-unit arbitration right of Paragraph 3(c): "<u>with the exception of matters referenced in paragraph 3(c) above</u>, the meaning or application of this Agreement shall not be subject to arbitration."  (Emphasis supplied.)

AT&T argues that arbitration under Paragraph 3(c) only applies to operations existing as

3

of the Agreement's date. It is free to make that Argument to the Arbitrator. But the obvious

meaning of Paragraph 6 is that, after a grace period of 120 days after acquisition, the parties shall

confer about defining bargaining units, with an incorporated right of arbitration to resolve

disputes over how these new unit fit within the broader structure of "the Company"— which the

parties define to include all present and future AT&T subsidiaries.

> **2.      Paragraph 3(c)(2) contemplates bargaining-unit definition for newly acquired operations.**

AT&T claims that Paragraph 3(c) arbitration is unavailable for any units that were not in

existence when the Agreement was executed. It claims that the directive for the parties to meet

"within 90 days" of the Agreement's effective date limits the Arbitrator's jurisdiction to pre-

existing units, with no authority over subsequently acquired operations. That misrepresents

Paragraph 3(c). Paragraph 3(c)(1) gives the <u>parties</u> 90 days to commence discussions over

bargaining units. But it imposes no fixed temporal limit for invoking the arbitrator's resolution of

disputes. These issues may be brought to the arbitrator "within a reasonable time." What

constitutes a reasonable time is an issue for the arbitrator. *Howsam v. Dean Witter Reynolds,*

*Inc.*, 537 U.S. 79, 84 (2002). AT&T disregards this law.

Paragraphs 3(c)(2) gives the Arbitrator authority to redefine the Company's unit structure

in the event of organizational changes. AT&T argues that Paragraph 3(c)(2) only applies to

changes in units existing as of the Agreement's initial date. AT&T Opp., Doc. 17 at 6. That

cannot be reconciled with the definition of "the Company" bound by the Agreement, which is

"AT&T Inc. and all other present <u>and future</u> companies, divisions, subsidiaries or operating units

thereof [with five named exceptions.]"(emphasis supplied.) So where AT&T acquires a new

Time Warner subsidiary, this organizational change affects the general unit structure of the

AT&T family of operations, which is described as a singular whole in the Agreement. This change is therefore subject to arbitration over the change in "the Company's" bargaining units.

### 3. AT&T may not claim that it did not agree to arbitration, simply by its present say-so.

AT&T seems to claim, that because it does not accept the Union's position now, the parties could not have agreed to arbitration. AT&T Opp., Doc. 17 at 7, Bain Decl. Doc 17-2, ¶¶ 3-4. This elevates its own say-so over the neutral construction of the Agreement.

By definition, any party who does not want to arbitrate a dispute will contend that it "did not agree" to arbitration. But AT&T's current position is not determinative. The neutral decisionmaker (whether the Court or the arbitrator) must interpret the Agreement as written. The fact that one party now disagrees with the other's interpretation does not create "bargaining history" that controls the construction of the Agreement. *See United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 568 (1960); *Madison Hotel v. Hotel and Restaurant Employees, Local 25*, 144 F.3d 855, 857-859 (D.C. Cir. 1998) (*en banc*).

### 4. The past history of consensual resolution is not "bargaining history" that precludes the Union's claim.

AT&T also claims that this is the first time a dispute has arisen between the parties over new operations that has required arbitration. It therefore argues that the lack of past arbitrations forms a "bargaining history" that precludes the Union's claim. AT&T Opp., Doc. 17 at 7. Its declarant Randy Bain merely asserts: "From [1997 to now], and in the context of the MOA's card-check provisions, the parties have never arbitrated a dispute over a newly acquired entity, they have never arbitrated a dispute over the definition of a bargaining unit that did not exist when they signed the MOA, and they have never arbitrated a dispute over the Company's

determination of whether individuals are 'management' or 'non-management' employees." Bain Decl. Doc 17-2, ¶ 2.

The parties' past ability to resolve these issues consensually has no bearing on the meaning of the Agreement. AT&T does not claim that there has ever been a large-scale merger prior to TimeWarner where the parties were in disagreement requiring arbitration. Nor does it claim that any court or arbitrator has ever refused arbitration, or approved AT&T's current position. Nor does it claim that the Union ever agreed to AT&T's current construction of the Agreement. The fact that that the parties have been able to resolve issues without arbitration in the past does not prejudice the Union's present rights under the Agreement.

**B.     AT&T Agreed to Submit the Issue of Arbitrability to the Arbitrator by Incorporating AAA Rules.**

In any case, the parties agreed to allow the Arbitrator to decide the issue of arbitrability by incorporating American Arbitration Association (AAA) rules in Paragraph 3(c)(1). Rule 3(a) of the American Arbitration Association's Labor Arbitration Rules provides "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement."

**1.     When the parties incorporate AAA Rules, they consent to the arbitrator deciding his jurisdiction no matter how broad or narrow the arbitration clause.**

In *Chevron Corp. v. Ecuador*, 795 F.3d 200, 207-208 (D.C. Cir. 2015), the Court held that incorporation of the UNCITRAL rules bound the parties to arbitrate arbitrability, even though the plaintiff claimed that its case fell under an exception to the arbitration provision. The D.C. Circuit held that the district court had correctly declined to address whether the plaintiff's claims fell within that exception. *Id.* "There was no need for the District Court to independently

determine that [the plaintiff's] suits satisfied the [treaty's] parameters once it had concluded that the parties had delegated this task to the arbitrator." *Id.,* 793 F.3d at 208. *See also Oracle America v. Myriad Group A.G.,* 724 F.3d 1069, 1075-76 (9th Cir. 2013) (approved in *Chevron,* 795 F.3d at 207-208, applying AAA rules to preserve arbitrator's power to decide whether his authority fell within carve-out exemptions.)

AT&T's only response is to propose an undefined distinction between "a broad arbitration provision with a narrow exception, [and] a narrow arbitration agreement with an explicit exclusion." AT&T Opp., Doc. 17 at 10. AT&T does not even try to explain how "broad" or how "narrow" an arbitration clause must be before an arbitrator loses authority to decide these limitations under AAA Rules. AT&T ignores *Chevron.* In *Chevron,* the D.C. Circuit concluded that the district court had correctly declined to address whether the plaintiff's claims fell within the scope of an exclusion to arbitration, not because the exclusion was "broad" or "narrow," but because the agreement was "not silent on who decides arbitrability." 795 F.3d at 207.

In this case, the parties' express incorporation of AAA Rules means that AT&T must address its arguments about the scope of the arbitrator's authority to the arbitrator, not the Court.

> **2.      If AT&T had wanted to preserve Court jurisdiction over arbitrability, it should not have consented to AAA Rules.**

AT&T argues that enforcing AAA Rules would always deprive any party of independent Court review of arbitrability: "If the Union were correct, parties could never limit arbitration to one part of a MOA. They could always be forced to arbitrate threshold issues, no matter how clearly they expressed their intent to the contrary." AT&T Opp., Doc. 17 at 11. There is a simple answer to AT&T's objection. AT&T voluntarily <u>agreed</u> to incorporate AAA Rules. If AT&T had wanted to keep the arbitrator from deciding threshold issues of arbitrability, it should not have

agreed to incorporate AAA Rules. A party is not required to agree to those AAA Rules, but once it does, that incorporation is "clear and unmistakable" consent to let the arbitrator decide arbitrability. *See* Union Opening Memo., Doc. 12 at pp. 17-18.

**II.     Arbitration of Contractual Bargaining Units Is Not Barred by NLRB Jurisdiction.**

Next, AT&T argues that <u>any</u> arbitration of contractual bargaining units is an illegal encroachment on the National Labor Relations Board's (NLRB's) authority. This is an attempt to repudiate the <u>entire</u> contract, as to its pre-existing units as well any future ones.

**A.     The Arbitrator Decides Challenges to the Contract as a Whole.**

AT&T does not respond to our argument that the Arbitrator has authority to decide challenges to the validity of the contract as a whole. Under both AAA Rule 3(b) and *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 444 (2006), arbitrators have authority in the first instance to consider "challenges [to] the contract as a whole, either on a ground that directly affects the entire agreement . . . or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." AT&T does not address this point. If AT&T seriously contends that the entire card-check agreement, including its private definitions of bargaining units, is an unlawful encroachment on NLRB jurisdiction, it must make that argument the Arbitrator in the first instance.

**B.     NLRB Jurisdiction Does Not Bar Arbitration of Contractual Units.**

AT&T's argument is wrong in any event, under binding Supreme Court and Circuit law.

**1.     AT&T cannot distinguish binding Supreme Court and Circuit law.**

Courts must order arbitration over contractual disputes over the scope of a bargaining unit, even where the issue overlaps with the NLRB's authority over union representation. *Carey*

*v. Westinghouse Elec. Corp.,* 375 U.S. 261, 272 (1964) (holding that union could compel arbitration over unit scope: "However the dispute be considered-whether one involving work assignment or one concerning representation-we see no barrier to use of the arbitration procedure.") AT&T tries to distinguish *Carey* by claiming that it only applies to existing units, and not newly acquired ones. AT&T Opp., Doc. 17 at 14. Nothing in *Carey* supports this *ad hoc* distinction. If NLRB jurisdiction over unit definition were exclusive, it would be exclusive as to existing as well as future units. This is not the law. AT&T ignores the consensus that "card-check" recognition agreements covering future units may be properly arbitrated. *See* Union Opening Motion, Doc. 12 at pp. 22-23.[1]

Following *Carey*, the D.C. Circuit has repeatedly held that parties to a labor agreement may arbitrate issues over the definition of contractual units. *See McDonnell Douglas Corp. v. NLRB*, 59 F.3d 230, 234 (D.C. Cir. 1995) ("The Board has never suggested that a union and employer cannot contractually bind each other as to the scope of the bargaining unit. In fact the Board remarked in this very case that it has a policy of encouraging unions and employers to enter into such agreements.") Arbitral resolution of bargaining-unit inclusions, including disputes over supervisory status, are entirely proper in this Circuit. *Office and Professional Employees Local 2 v. Washington Metropolitan Area Transit Authority*, 724 F.2d 133, 140-141

---

[1] *See Hotel & Restaurant Employees Local 217 v. J.P. Morgan Hotel*, 996 F.2d 561, 566 (2d Cir. 1993) ("Even were a dispute representational in nature, an arbitrator acting pursuant to a contract can make the initial decision on the merits, see *Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 272 (1964)."); *AK Steel Corp. v. United Steelworkers*, 163 F.3d 403, 407 (6th Cir. 1998); *United Steel Workers v. TriMas Corp.*, 531 F.3d 531, 537-538 (7th Cir. 2008); *Hotel Employees, Local 2 v. Marriott Corp.*, 961 F.2d 1464, 1468 (9th Cir. 1992); *see also Georgetown Hotel v. NLRB*, 835 F.2d 1467, 1470-71 (D.C. Cir.1987) (employer may elect to be bound by card check procedure in lieu of Board election); *Local 82, Service Employees Union, v. Pritchard Industries, Inc*., 827 F.Supp. 35, 36-37 & n.3 (D.D.C. 1993).

(D.C. Cir. 1983) (same deference owed to an arbitration award defining the scope of a contractual unit, including supervisory status, as it did to any other arbitral decision.); *Retail Clerks Local 588 v. NLRB*, 565 F.2d 769, 774-775 (D.C. Cir. 1977) ("we find the Supreme Court's encouragement of arbitration in [*Carey*] that case persuasive. At the time Local 588 invoked the use of the contractual grievance-arbitration procedure, a resulting private, consensual resolution of the strictly contractual matters involved could have aided the disputants in resolving their disagreement fully without resort to the Board, or at least could have reached a conclusion necessary to allow the Board's subsequent determination of the unit questions to end the dispute in its entirety.") Where the parties have agreed to a consensual "card check" procedure, the NLRB will now honor arbitration as an alternative to NLRB representation proceedings. *Verizon Information Systems*, 335 NLRB 558, 559 (2001).

### 2.     *MEBA* does not change the law.

AT&T's only response is to seize on general language in *Dist. No. 1, Marine Eng'rs' Beneficial Ass'n (MEBA) v. Liberty Mar. Corp.*, 815 F.3d 834, 839 (D.C. Cir. 2016), to claim that all agreements to arbitrate the scope of bargaining units are now invalid.  AT&T Opp., Doc. 17 at 14.

*MEBA* did no such thing. In *MEBA*, the D.C. Circuit's actual holding was to order arbitration in favor of a union, and to reject an employer's claim that NLRB jurisdiction was exclusive. 815 F.3d at 839. AT&T seizes on the *MEBA* opinion's general discussion of contractual versus representational claims, to argue that *Carey*, 375 U.S. at 272, *McDonnell Douglas*, 59 F.3d at 234, *WMATA*, 724 F.2d at 140-141, and *Retail Clerks*, 565 F.2d at 774-775 have all been overruled *sub silentio*. AT&T ignores that the NLRB <u>itself</u> now recognizes that

private agreements defining procedures for voluntary recognition are entirely lawful, and should be deferred to. *Verizon Information Systems*, 335 NLRB at 559.

*MEBA* did not purport to catalogue all the circumstances in which the NLRB would have exclusive jurisdiction. Nor did it face the present context—where a voluntary "card check" recognition agreement provides for arbitral definition of units. Its general outline in the course of ordering arbitration on other facts is not a holding controlling the facts of all future cases. "[G]eneral expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision." *Tuaua v. U.S.*, 788 F.3d 300, 305 (D.C. Cir. 2015) *quoting United States v. Wong Kim Ark*, 169 U.S. 649, 679 (1898). *See also American Meat Institute v. U.S. Dept. of Agriculture*, 760 F.3d 18, 22 (D.C. Cir. 2014) (*en banc*), *citing Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994); *UC Health v. N.L.R.B.*, 803 F.3d 669, 681-684 (D.C. Cir. 2015) (Edwards, J., concurring) (*citing King v. Morton*, 520 F.2d 1140, 1147 (D.C. Cir.1975); *Whitacre v. Davey*, 890 F.2d 1168, 1172 (D.C. Cir.1989) ("We cannot count as controlling a decision that never touched upon the issue we confront" when that point "was simply not considered" in the prior case).

### 3.    *MEBA* did not overrule prior Supreme Court and D.C. Circuit law.

AT&T's claim that general language in *MEBA* overruled prior law is not defensible for a more basic reason. *Carey* held that courts must order arbitration of disputes over unit inclusion even if that issue might overlap with the NLRB's future consideration. 375 U.S. at 272. *MEBA* did not purport to overrule this law. It did not cite any superseding statutory or Supreme Court revision of this rule. AT&T may not therefore claim that *Carey* can be disregarded so lightly. *See*

11

*Libertarian National Committee, Inc. v. Federal Election Commission*, 924 F.3d 533, 549 (D.C. Cir. 2019), *quoting Agostini v. Felton,* 521 U.S. 203, 237 (1997) ("Unless and until the [Supreme] Court expressly abrogates it, this 'inferior court' lacks authority to 'conclude [that a] more recent case[ ]' has, 'by implication, overruled an earlier precedent.' )

 AT&T is also wrong to claim that the panel decision in *MEBA* "overruled" prior D.C. Circuit decisions in *McDonnell Douglas*, 59 F.3d at 234, *WMATA*, 724 F.2d at 140-141, and *Retail Clerks*, 565 F.2d at 774-775. AT&T Opp., Doc. 17 at 14. If AT&T reads *MEBA* to conflict with those prior Circuit decisions (which it does not), the conflict would have to be resolved in favor of the prior Circuit precedent. *MEBA* was not an *en banc* decision that could change Circuit law, nor did it invoke any intervening change in Supreme Court law. One panel may not overrule prior panel decisions without *en banc* or Supreme Court authority. *See FedEx Home Delivery v. NLRB*, 849 F.3d 1123, 1127 n.3 (D.C. Cir. 2017) ("when a conflict exists within our own precedent," a court is "bound by the earlier" of the two conflicting decisions.", citing *United States v. Old Dominion Boat Club*, 630 F.3d 1039, 1045 (D.C. Cir. 2011); *see also Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) ("[W]hen a decision of one panel is inconsistent with the decision of a prior panel, the norm is that the later decision, being in violation of that fixed law, cannot prevail."); *Independent Cmty. Bankers of America v. Board of Governors of the Fed. Reserve Sys.*, 195 F.3d 28, 34 (D.C. Cir. 1999) ("[W]hen faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom."))

 AT&T's claim that the entire Agreement is unlawful is therefore meritless.

## **CONCLUSION**

The Court should grant Plaintiff CWA's Cross-Motion to Compel Arbitration, and order Defendant AT&T, Inc. to proceed to arbitration of the CWA's March 6 and April 12, 2019 demands before Arbitrator Richard I. Bloch.

Respectfully submitted,

/s Michael T. Anderson

Michael T. Anderson (# 459617)
Arlus J. Stephens (# 478938)
Jason Veny (# 1049121)
Murphy Anderson PLLC
1401 K St. NW Suite 300
Washington DC 20005
(202) 223-2620
(202) 296-9600 (fax)
manderson@murphypllc.com
astephens@murphypllc.com
jveny@murphypllc.com

Attorneys for Plaintiff
Communications Workers of America AFL-CIO

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on July 15, 2019, I electronically filed the foregoing with the Clerk of Court for the United States District Court for the District of Columbia by using the appellate CM/ECF system. All participants who have appeared in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system:

/s Michael T. Anderson

13