# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: 1:19–cv–01220–CJN

| | |
|---|---|
| COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO v. AT&T INC. <br> Assigned to: Judge Carl J. Nichols <br> Cause: 05:7101 Labor–Management Relations | Date Filed: 04/26/2019 <br> Date Terminated: 04/10/2020 <br> Jury Demand: None <br> Nature of Suit: 720 Labor: Labor/Mgt. Relations <br> Jurisdiction: Federal Question |

**Plaintiff**

**COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO**    represented by   **Arlus Jeremiah Stephens**
MURPHY ANDERSON PLLC
1401 K Street, NW
Suite 300
Washington, DC 20005
(202) 223–2620
Fax: (202) 296–9600
Email: astephens@murphypllc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason R. Veny**
MURPHY, ANDERSON PLLC
1401 K Street, NW
Suite 300
Washington, DC 20005
(202) 223–2620
Email: JVeny@murphypllc.com
*ATTORNEY TO BE NOTICED*

**Michael Timothy Anderson**
MURPHY ANDERSON PLLC
1401 K Street, NW
Suite 300
Washington, DC 20005
(202) 223–2620
Fax: (202) 296–2900
Email: manderson@murphypllc.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**AT&T INC.**    represented by   **Maurice Baskin**
LITTLER MENDELSON, P.C.
815 Connecticut Avenue, NW

Suite 400
Washington, DC 20006
(202) 842–3400
Fax: (202) 842–0011
Email: mbaskin@littler.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen J. Sferra**
LITTLER MENDELSON, P.C.
1100 Superior Avenue
20th Floor
Cleveland, OH 44114
(216) 649–0538
Email: ssferra@littler.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 04/26/2019 | 1 | | COMPLAINT against AT&T INC. ( Filing fee $ 400 receipt number 0090–6084362) filed by COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Civil Cover Sheet, # 4 Supplement Certificate Rule LCvR 26.1, # 5 Summons)(Anderson, Michael) (Attachment 3 replaced on 4/26/2019) (zef, ). (Entered: 04/26/2019) |
| 04/26/2019 | 2 | | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO. (zef, ) (Entered: 04/26/2019) |
| 04/26/2019 | | | Case Assigned to Judge Rudolph Contreras. (zef, ) (Entered: 04/26/2019) |
| 04/26/2019 | 3 | | SUMMONS (1) Issued Electronically as to AT&T INC. (Attachments: # 1 Notice and Consent)(zef, ) (Entered: 04/26/2019) |
| 04/26/2019 | 4 | | ERRATA by COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO 1 Complaint, filed by COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Civil Cover Sheet, # 4 Supplement Certificate Rule LCvR26.1, # 5 Summons)(Anderson, Michael) (Attachment 3 replaced on 5/3/2019) (znmw). (Entered: 04/26/2019) |
| 04/30/2019 | 5 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. AT&T INC. served on 4/26/2019, answer due 5/17/2019 (Anderson, Michael) (Entered: 04/30/2019) |
| 05/13/2019 | 6 | | NOTICE of Appearance by Arlus Jeremiah Stephens on behalf of COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO (Stephens, Arlus) (Entered: 05/13/2019) |
| 05/14/2019 | 7 | | NOTICE of Appearance by Maurice Baskin on behalf of AT&T INC. (Baskin, Maurice) (Entered: 05/14/2019) |
| 05/14/2019 | 8 | | Consent MOTION for Extension of Time to File Answer re 1 Complaint, by AT&T INC. (Attachments: # 1 Text of Proposed Order)(Baskin, Maurice) (Entered: 05/14/2019) |

| 05/14/2019 | 9 | | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by AT&T INC. (Baskin, Maurice) (Entered: 05/14/2019) |
| --- | --- | --- | --- |
| 05/14/2019 | | | MINUTE ORDER granting 8 motion for extension of time: It is hereby ORDERED that Defendant shall have up to and including May 31, 2019 to file its answer or other response to Plaintiff's complaint. SO ORDERED. Signed by Judge Rudolph Contreras on 5/14/19. (lcrc1) (Entered: 05/14/2019) |
| 05/21/2019 | | | Set/Reset Deadlines: Answer due by 5/31/2019, (tj) (Entered: 05/21/2019) |
| 05/31/2019 | 10 | | MOTION to Dismiss by AT&T INC. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Baskin, Maurice) (Entered: 05/31/2019) |
| 06/13/2019 | 11 | | Memorandum in opposition to re 10 MOTION to Dismiss filed by COMMUNICATIONS WORKERS OF AMERICA, AFL−CIO. (Attachments: # 1 Text of Proposed Order Denying Motion to Dismiss)(Anderson, Michael) (Entered: 06/13/2019) |
| 06/13/2019 | 12 | | Cross MOTION to Compel *Arbitration* by COMMUNICATIONS WORKERS OF AMERICA, AFL−CIO (Attachments: # 1 Declaration of Sandy Rusher, # 2 Exhibit A to Rusher Declaration− AAA Rules, # 3 Exhibit B to Rusher Declaration− Correspondence, # 4 Text of Proposed Order)(Anderson, Michael) (Entered: 06/13/2019) |
| 06/13/2019 | 13 | | NOTICE of Appearance by Jason R. Veny on behalf of COMMUNICATIONS WORKERS OF AMERICA, AFL−CIO (Veny, Jason) (Entered: 06/13/2019) |
| 06/13/2019 | 14 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Stephen J. Sferra, :Firm− Littler Mendelson, PC, :Address− 1100 Superior Ave, 20th Floor, Cleveland, OH 44114. Phone No. − 216.623.6089. Fax No. − 216.649.0538 Filing fee $ 100, receipt number 0090−6186504. Fee Status: Fee Paid. by AT&T INC. (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Baskin, Maurice) (Entered: 06/13/2019) |
| 06/17/2019 | 15 | | Consent MOTION for Extension of Time to *Reply to Plaintiff's Opposition and to Oppose Plaintiff's Motion to Compel* by AT&T INC. (Attachments: # 1 Text of Proposed Order)(Baskin, Maurice) (Entered: 06/17/2019) |
| 06/18/2019 | | | MINUTE ORDER granting 14 motion for leave to appear *pro hac vice*: Pursuant to Local Civil Rule 83.2(d), it is hereby ORDERED that Stephen J. Sferra is admitted to represent Defendant *pro hac vice* in this case. SO ORDERED. Signed by Judge Rudolph Contreras on 6/18/19. (lcrc1) (Entered: 06/18/2019) |
| 06/18/2019 | | | MINUTE ORDER granting 15 motion for extension of time: It is hereby ORDERED that Defendant shall have up to and including July 5, 2019, to file its reply in further support of its 10 motion to dismiss. It is FURTHER ORDERED that Defendant shall have up to and including July 11, 2019, to file its opposition to Plaintiff's 12 cross−motion to compel arbitration. SO ORDERED. Signed by Judge Rudolph Contreras on 6/18/19. (lcrc1) (Entered: 06/18/2019) |
| 06/26/2019 | | | Case directly reassigned to Judge Carl J. Nichols. Judge Rudolph Contreras is no longer assigned to the case. (rj) (Entered: 06/26/2019) |
| 07/03/2019 | 16 | | |

| | | | |
|---|---|---|---|
| | | | REPLY re 10 Motion to Dismiss filed by AT&T INC.. (Baskin, Maurice) Modified on 7/3/2019 to correct docket link (jf). (Entered: 07/03/2019) |
| 07/11/2019 | 17 | | RESPONSE re 12 Cross MOTION to Compel *Arbitration* filed by AT&T INC.. (Attachments: # 1 Statement of Genuine Issues of Material Fact, # 2 Declaration of Randy Bain, # 3 Text of Proposed Order)(Baskin, Maurice) (Entered: 07/11/2019) |
| 07/15/2019 | 18 | | REPLY to opposition to motion re 12 Cross MOTION to Compel *Arbitration* filed by COMMUNICATIONS WORKERS OF AMERICA, AFL−CIO. (Anderson, Michael) (Entered: 07/15/2019) |
| 08/15/2019 | 19 | | NOTICE OF SUPPLEMENTAL AUTHORITY by COMMUNICATIONS WORKERS OF AMERICA, AFL−CIO (Attachments: # 1 Exhibit District 1, MEBA v. Liberty Maritime, ___ F.3d ___, 2019 WL 3756455 (D.C. Cir. Aug. 9, 2019))(Anderson, Michael) (Entered: 08/15/2019) |
| 08/19/2019 | 20 | | RESPONSE re 19 NOTICE OF SUPPLEMENTAL AUTHORITY filed by AT&T INC.. (Baskin, Maurice) Modified event title on 8/20/2019 (znmw). (Entered: 08/19/2019) |
| 01/16/2020 | | | MINUTE ORDER. After review of Defendant's 10 Motion to Dismiss Complaint and Plaintiff's 11 Cross−Motion to Compel Arbitration, it is hereby ORDERED that a hearing on the Motions is set for February 6, 2020, at 10:00 AM in Courtroom 19. Signed by Judge Carl J. Nichols on January 16, 2020. (lccjn1) (Entered: 01/16/2020) |
| 01/17/2020 | | | Set/Reset Hearings: Hearing On Motions set for 2/6/2020 at 10:00 AM in Courtroom 19 before Judge Carl J. Nichols. (mac) (Entered: 01/17/2020) |
| 02/06/2020 | | | Minute Entry for proceedings held before Judge Carl J. Nichols: Motion Hearing held on 2/6/2020 re 10 Motion to Dismiss And 11 Cross−Motion to Compel Arbitration. The Court Will Take This Matter Under Advisement. (Court Reporter JANICE DICKMAN.) (mac) (Entered: 02/06/2020) |
| 02/06/2020 | | | ENTERRED IN ERROR AS DUPLICATIVE.....Minute Entry for proceedings held before Judge Carl J. Nichols: Motion Hearing held on 2/6/2020 re 10 Motion to Dismiss And 11 Cross−Motion to Compel Arbitration. The Court Will Take This Matter Under Advisement. (Court Reporter JANICE DICKMAN.) (mac) Modified on 2/7/2020 (zmac). Modified text on 2/10/2020 (zcdw). (Entered: 02/06/2020) |
| 02/14/2020 | 21 | | TRANSCRIPT OF PROCEEDINGS before Judge Carl J. Nichols held on February 6, 2020; Page Numbers: 1−40. Date of Issuance:February 14, 2020. Court Reporter: Janice Dickman. Telephone number: 202−354−3267, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced a bove. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to |

| | | | |
|---|---|---|---|
| | | | redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/6/2020. Redacted Transcript Deadline set for 3/16/2020. Release of Transcript Restriction set for 5/14/2020.(Dickman, Janice) (Entered: 02/14/2020) |
| 04/10/2020 | 22 | | MEMORANDUM OPINION. Signed by Judge Carl J. Nichols on April 10, 2020. (lccjn1) (Entered: 04/10/2020) |
| 04/10/2020 | 23 | | ORDER. Signed by Judge Carl J. Nichols on April 10, 2020. (lccjn1) (Entered: 04/10/2020) |
| 05/08/2020 | 24 | | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 23 Order on Motion to Dismiss, Order on Motion to Compel by COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO. Filing fee $ 505, receipt number CDCDC–7105116. Fee Status: Fee Paid. Parties have been notified. (Anderson, Michael) (Entered: 05/08/2020) |

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO,<br><br>    Plaintiff,<br><br> v.<br><br>AT&T INC.,<br><br>    Defendant. | Case 1:19-cv-01220-(CJN) |

## NOTICE OF APPEAL

Notice is hereby given that Plaintiff Communications Workers of America, AFL-CIO, hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from the District Court's April 10, 2020 Order granting Defendant's Motion to Dismiss and denying Plaintiff's Motion to Compel Arbitration.

May 8, 2020      Respectfully submitted,

            /s Michael T. Anderson

            Michael T. Anderson (# 459617)
            Arlus J. Stephens (# 478938)
            Jason Veny (# 1049121)
            Murphy Anderson PLLC
            1401 K St. NW Suite 300
            Washington DC 20005
            (202) 223-2620
            (202) 296-9600 (fax)
            manderson@murphypllc.com
            astephens@murphypllc.com
            jveny@murphypllc.com

            Attorneys for Plaintiff
            Communications Workers of America AFL-CIO

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 8, 2020, I electronically filed the foregoing with the Clerk of Court for the United States District Court for the District of Columbia by using the appellate CM/ECF system. All participants who have appeared in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system:


/s Michael T. Anderson

| | |
|---|---|
| COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, *Plaintiff*, v. AT&T INC., *Defendant*. | Civil Action No. 1:19-cv-01220 (CJN) |

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that AT&T Inc.'s Motion to Dismiss is **GRANTED** and the Communication Workers of America, AFL-CIO's Cross-Motion to Compel Arbitration is **DENIED**.

DATE: April 10, 2020

CARL J. NICHOLS
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COMMUNICATIONS WORKERS OF
AMERICA, AFL-CIO,

        *Plaintiff*,

    v.

AT&T INC.,

        *Defendant*.

Civil Action No. 1:19-cv-01220 (CJN)

## MEMORANDUM OPINION

The Communications Workers of America, AFL-CIO ("Union") filed this lawsuit to compel arbitration against AT&T Inc. *See generally* Compl., ECF No. 1. AT&T moves to dismiss the Complaint for failure to state a claim and for lack of subject matter jurisdiction. *See generally* Def.'s Mot. to Dismiss Compl. ("Def.'s Mot."), ECF No. 10. The Union cross-moves to compel arbitration. *See generally* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss and in Supp. of Cross-Mot. to Compel Arbitration ("Pl.'s Opp'n & Cross-Mot."), ECF No. 11. For the reasons that follow, the Court grants AT&T's Motion and denies the Union's Cross-Motion.

### I.    Background

#### A.    The Parties' Dispute

AT&T and the Union entered a Memorandum of Agreement Regarding Neutrality and Card Check Recognition ("Agreement"), which governs union organizing procedures at AT&T. Compl. ¶ 1. The Parties executed the current version of the Agreement on April 9, 2017, for a term through April 10, 2021. *Id. See generally* Agreement, ECF No. 1-1. The Agreement binds the Union and AT&T and "all other present and future companies, divisions, subsidiaries[,] or operating units thereof" except certain enumerated AT&T entities. Agreement ¶ 2(b).

On June 14, 2018, AT&T successfully closed a merger with Time Warner Inc. *See* Compl. ¶ 14. Following the merger, the Parties' current dispute arose: whether the now former Time Warner employees should be classified into the Union's preexisting bargaining units. *See id.* ¶ 16. On March 6, 2019, the Union demanded to arbitrate that dispute pursuant to paragraph 3(c) of the Agreement. *See id.* ¶ 19; *see also* Agreement ¶ 3(c). AT&T refused to arbitrate, claiming that "the current dispute regarding the meaning and application of the Agreement is excluded from arbitration under the Agreement." Compl. ¶ 20.

### B. The Parties' Agreement

Because the Parties dispute even which provision of the Agreement governs the present set of facts, its relevant provisions are summarized here.

Paragraph 3 is titled "Card Check Recognition Procedure" and, as pertinent here, sets out the process for "defining appropriate bargaining units." Agreement ¶ 3(c)(1). Subparagraph (c)(1) provides for defining appropriate bargaining units following the effective date of the Agreement, *id.* ¶ 3 (c)(1), while subparagraph (c)(2) sets the procedure if AT&T or the Union believes that the bargaining unit agreed to on the basis of subparagraph (c)(1) "is no longer appropriate due to organizational changes," *id.* ¶ 3(c)(2). If the Parties cannot agree on the definition of appropriate bargaining units under subparagraph 3(c)(1) or (2), then both provisions refer "the issue of the description of such unit . . . to arbitration administered by, and in accordance with, the rules of the American Arbitration Association (AAA)." *Id.* ¶ 3(c)(1); *see also id.* ¶ 3(c)(2). The Parties require their selected arbitrator to be guided by "the statutory requirements of the National Labor Relations Act." *Id.* ¶ 3(c)(1).[1]

---

[1] As interpreted by the National Labor Relations Board (NLRB), bargaining units are defined "on the basis of whether particular employees enjoy a 'community of interests,' that is, 'a substantial mutuality of interest in wages, hours and working conditions, as revealed by the type of work they perform . . . .'" N. Peter Lareau, 2 *Labor and Employment Law* § 35.01[2] (May

Paragraph 6 is titled "Recognition for New Entities and New Work" and details various procedures for issues arising out of AT&T potentially reorganizing, restructuring, engaging in new lines of business, acquiring new companies, or entering new markets. *Id.* ¶ 6(a). A majority of the paragraph is dedicated to discussing provisions governing the acquisition of new entities. *See id.* ¶ 6(a)–(c). Subparagraph (d) preserves the Union's legal right to challenge any decision made by management under the paragraph except as limited by paragraph 9. *Id.* ¶ 6(d).

Paragraph 9 is titled "Dispute Resolution" and sets the process the Parties are to follow for disputes that arise under the Agreement. *Id.* ¶ 9. Except for challenges to the definition of bargaining units as described in paragraph 3(c), "the meaning or application of [the] Agreement shall not be subject to arbitration." *Id.* The paragraph also reserves each party's "right to seek judicial or other relief provided by law to enforce this Agreement." *Id.*

### C. Procedural History

On April 26, 2019, the Union filed its Complaint against AT&T, seeking to compel arbitration under the Agreement. Compl. ¶¶ 24–29. AT&T moved to dismiss, asserting that the Complaint fails to state a claim and that the Court does not have subject-matter jurisdiction over the dispute. *See generally* Def.'s Mot. The Union opposed AT&T's motion and cross-moved to compel arbitration. *See generally* Pl.'s Opp'n & Cross-Mot.

---

2019) (quoting NLRB Annual Report, Vol. 14, 32–33 (1949)). The NLRB looks to various criteria to evaluate units, including "methods of compensation, hours of work, employee benefits, interchange or frequency of contact between employees, common supervision and determination of labor relations policy, similarity in skills and training as well as in the type of work performed, geographic proximity, integration of work functions, history of collective bargaining[,] and the desires of the employees." *Id.*

## II. Legal Standard

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Union must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded facts alleged in the Complaint as true and draw all reasonable inferences from those facts in the Union's favor. *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1240–41 (D.C. Cir. 2018).

A motion to compel arbitration is reviewed under the standard for summary judgment as set in Federal Rule of Civil Procedure 56(c).[2] *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008). The movant bears the burden of showing the absence of a genuine factual dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The evidence presented must be "viewed in the light most favorable to the nonmoving party and the court must draw all reasonable inferences in favor of the nonmoving party." *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). "A dispute about a material fact is not 'genuine' unless 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Mogenhan v. Napolitano*, 613 F.3d 1162, 1165 (D.C. Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

---

[2] The Federal Arbitration Act, 9 U.S.C. §§ 1–16 (2018), governs all employment contracts except certain contracts in transportation-related industries. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109, 121 (2001) (interpreting the FAA to exempt certain transportation workers from its scope based on "their necessary role in the free flow of goods"). The Union alleges (and AT&T does not challenge) that the Agreement falls within the FAA's scope. Compl. ¶ 4.

### III. Analysis

To resolve the Parties' dispute, the Court must decide if the Parties agreed to arbitrate whether the now former Time Warner employees should be classified into the Union's preexisting bargaining units. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citation omitted). A "necessary corollary" to this principle is that "when the parties *have* provided that a particular type of dispute should be settled in arbitration, rather than in litigation, a court may not override that agreement by itself deciding such a dispute." *Nat'l R.R. Passenger Corp. v. Bos. & Me. Corp.*, 850 F.2d 756, 759 (D.C. Cir. 1988).

#### A. Arbitrating Arbitrability

As a preliminary matter, under the Agreement, the issue of arbitrability is one that this Court must decide. "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T*, 475 U.S. at 649. Here, the Parties agreed to arbitrate only "the description of an appropriate unit for bargaining," Agreement ¶ 3(c)(1), and "the re-definition of an appropriate unit" after an organizational change, *id.* ¶ 3(c)(2). Nowhere within this subset of issues is there any indication—let alone clear and unmistakable proof—that the question of arbitrability was to be decided by the arbitrator. In fact, paragraph 9, which governs dispute resolution, expressly states that arbitration is limited to the definition of appropriate bargaining units. *Id.* ¶ 9.

The Union argues that the Parties *implicitly* agreed to submit questions of arbitrability to the arbitrator by incorporating the AAA procedural rules, which give the arbitrator the ability to determine arbitrability, into paragraph 3 of the Agreement. Pl.'s Opp'n & Cross-Mot. at 17–20. Not so. A plain reading of the Agreement makes clear that the AAA rules were incorporated for

the narrow issue on which the Parties agreed to arbitrate: "the *issue of the description of* [*an appropriate unit for bargaining*] shall be submitted to arbitration administered by, and in accordance with, the rules of the [AAA]." Agreement ¶ 3(c)(1). In other words, the Parties agreed that the arbitrator could decide the issue of the description of an appropriate unit for bargaining but did not otherwise agree to give the arbitrator either broad authority or the authority to decide the specific question of arbitrability. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–300 (2010) ("Arbitration is strictly a matter of consent and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." (citations and internal quotation marks omitted)).

### B. Arbitrability of the Parties' Dispute

The Union argues that the Parties agreed to arbitrate issues such as whether the now former Time Warner employees should be classified into the Union's preexisting bargaining units. In its view, the "dispute is over the scope of the Arbitrator's authority in the 'determination of the appropriate unit for bargaining' under Paragraph 3(c)(1) and the 're-definition of an appropriate unit' due to organizational changes under Paragraph 3(c)(2)." Pl.'s Opp'n & Cross-Mot. at 13. The Union asserts that "Paragraph 3(c)(2) contemplates bargaining-unit definition for newly acquired operations." *Id.* at 14. It contends that the acquisition of Time Warner is an "organizational change" within the meaning of the phrase in paragraph 3(c)(2), and as a result, "this organizational change is subject to arbitration to deal with the change in [AT&T's] bargaining units." *Id.* at 15.

AT&T challenges the Union's interpretation. In its view, paragraph 6 of the Agreement "spells out a unique procedure by which the parties agreed to address new acquisitions, and this procedure does not include arbitration." Def.'s Mem. in Supp. of Mot. at 5. Paragraph 6, it argues, exclusively governs the acquisition of "new entities"—here, Time Warner. *Id.* As a

result, there is no place for paragraph 3(c)'s arbitration requirements. *See id.* Further, AT&T asserts that its interpretation is bolstered by the language of paragraph 9 of the Agreement, which excludes all matters except those listed in paragraph 3(c) from arbitration. *Id.*

The Court agrees with AT&T. The Parties' Agreement uses different terms and is structured to separate bargaining unit classification for existing units due to organizational changes, *see* Agreement ¶ 3(c)(2), from the acquisition of new entities, *see id.* ¶ 6. Within paragraph 3, the Agreement specifically provides for a procedure that includes arbitration. *E.g.*, *id.* ¶ 3(c)(1) ("In the event that the parties are unable to agree, after negotiating in good faith for a reasonable time, upon the description of an appropriate unity for bargaining, the issue of the description of such unit shall be submitted to arbitration . . . ."). Paragraph 6's provisions, by comparison, do not discuss or even contemplate arbitration. *See id.* ¶ 6.

Paragraph 6 is the only provision in the Agreement that speaks to the acquisition of new entities. Looking to subparagraph (a), the provision specifically separates "reorganization or restructuring," used in the first sentence, from "acquir[ing] new companies," used in the second. *Id.* ¶ 6(a). The first sentence requires AT&T to provide the Union with "reasonable advance notice" if it plans to reorganize or restructure or to engage in any new lines of business, while the second makes the Agreement applicable to an "acquired company or new line of business or enterprise in a new market after that company has been operating for a period of one hundred twenty (120) days." *Id.* Subparagraphs 6(b) and (c) then expand on AT&T's obligations to recognize bargaining units in the newly acquired company and provide a procedure for doing so. *Id.* ¶¶ 6(b)–(c). Neither subparagraph 6(b)'s or 6(c)'s procedure requires arbitration. *See id.* And the final provision, paragraph 6(d), states that the Union retains "any legal rights it may have to challenge any management decision or determination described" in the paragraph,

"[e]xcept as specified in paragraph 9." *Id.* ¶ 6(d). Paragraph 9, for its part, states that "[w]ith the exception of matters referenced in paragraph 3.(c). . . . the meaning or application of this Agreement shall *not* be subject to arbitration." *Id.* ¶ 9 (emphasis added). Based on this structure, an "organizational change" cannot encompass the acquisition of a new entity like Time Warner; the Agreement uses different terms and provides separate procedures and requirements for these two different events. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012) ("[W]here the document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea.").

Thus, whether the now former Time Warner employees should be classified into the Union's preexisting bargaining units is governed by the procedures of paragraph 6 as they relate to AT&T's new acquisitions, not paragraph 3. Because the Parties did not agree to arbitrate issues arising under paragraph 6 of the Agreement, and indeed expressly agreed in paragraph 9 that such issues would not be subject to arbitration, the Union's Complaint seeking arbitration fails to state a claim upon which the Court can grant relief. *See National R.R.*, 850 F.2d at 759 ("The first principle of arbitrability . . . is that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (citation and internal quotation marks omitted)).

## IV. Conclusion

For the foregoing reasons, AT&T's Motion is **GRANTED,** and the Union's Cross-Motion is **DENIED**. An Order will be entered contemporaneously with this Memorandum Opinion.

DATE: April 10, 2020

*[signature]*

CARL J. NICHOLS
United States District Judge